## J. J. T. WRIGHT v. R. C. CAMPBELL.

### No. 3064.

1. **Vendor's Lien — Fact Case.** — See facts held sufficient to support a decree foreclosing vendor's lien. The note sued on and the deed of same date expressed the lien. Testimony was exhibited to show that the note was given for a balance of a running account for supplies.

2. **Same—Express Lien.**—Conceding that the purchase money had been paid before the execution of the note, still the words of the note and of the deed show intention of the parties to recognize and give a lien upon the land. This was done in the papers executed, and regardless of the form, it was legal and could be enforced.

APPEAL from Camp. Tried below before Hon. JOHN L. SHEPPARD. The opinion states the case.

*M. L. Morris,* for appellant.—A vendor's lien exists independent of contract as being the consideration of the sale and purchase of land, and no contract verbal or written can make that the purchase money of land or a vendor's lien thereon which in fact is not. Parol testimony may be resorted to, to explain a note which reserves a vendor's lien, and the burden is on plaintiff to establish his lien; and if the lien in fact does not exist and the amount in controversy is under $200, the court will dismiss the case for want of jurisdiction. Wasson v. Davis, 34 Texas, 159; Swain v. Cato, 34 Texas, 398; Sutton v. Sutton, 39 Texas, 549; Hicks v. Morris, 57 Texas, 658; Flanagan v. Cushman, 48 Texas, 241; De Bruhl v. Maas, 54 Texas, 464; Rogers v. Blum, 56 Texas, 1; Senter & Co. v. Lambeth, 59 Texas, 259; Joiner v. Perkins, 59 Texas, 300; Snyder v. Wiley & Porter, 59 Texas, 448; Cameron & Co. v. Marshall, 65 Texas, 7.

*E. L. King,* for appellee.

HOBBY, PRESIDING JUDGE, *Section A.*—R. C. Campbell, the appellee, brought suit in the District Court of Camp County, on July 20, 1889, against J. T. Wright, the appellant, on a note for $260.60, and to foreclose the vendor's lien on the land described in the petition, for which it was alleged the note was executed. The balance due after the allowance of the proper credits was $156.20.

The defendant's answer contained a general denial, and several special pleas, the only one of which it is important to notice being the averment, substantially, "that he executed a note to appellee for the amount stated in the petition;" but that the same was for no part of the purchase money of the land described, etc., and was never, and is not now, a vendor's lien on said land, and without said lien, the debt being less than $200, the court has no jurisdiction, etc.

There was a trial before a jury on May 15, 1890, resulting in a verdict for the plaintiff below for $156.20, with interest, etc., and a foreclosure of the lien as prayed for, upon which judgment was entered. This appeal is from that judgment, upon substantially one assignment of error, although several are presented.

This assignment is, that "the jury erred in finding that the note sued on was given to secure the payment of the purchase money of the land described, because there was no evidence to support such finding;" and the "evidence shows that the note was executed for the balance of an account for supplies and advances," etc., furnished by appellee to appellant.

The question raised by the assignment relates to the sufficiency of the testimony to sustain the verdict, and its determination requires merely an examination of the evidence for the purpose of ascertaining whether the error assigned is well founded.

The evidence in the case consisted, first, of the note sued on for the sum of $260.60, dated February 1, 1886, reduced by a credit thereon to the sum of $156.60. This note recites, that it "is given for 102 acres of the Allen Dillard headright in Camp County, for a description of which reference is made to the deed of the same date." The deed mentioned, which was also introduced by appellee, was executed by him on the same day, and it expressly reserved a lien upon the land, described by metes and boundaries, to secure the payment of the foregoing note. In addition to this, the appellee testified, that the note sued on "was given for a part of the purchase money of the land described in the petition." The legal title to the land, it is not disputed, was in the appellee at the time of the execution of the conveyance to appellant. Although the appellant denies that the note was in fact executed as before explained, to secure the payment of the purchase money for the land conveyed to him, it will not be questioned that the foregoing evidence affords abundant proof of the fact that an express lien was retained by the vendor to secure the payment of the note. This being so, the verdict is fully sustained.

The contention of the appellant is, that notwithstanding such proof the note was not in fact executed to secure the payment of any part of the purchase money due on the land; but that it was given in settlement of the balance of an account which in the course of the dealings between the parties was found to be due appellee. This amount is not disputed by appellant, but the controversy grows out of his denial that any lien was retained on the land. The facts, however, on which appellant relies, we do not think will support his position.

It appears that in November, 1882, he purchased from L. C. Greer 254 acres of land, 102 acres of which is the land in litigation. He paid about $635 of the purchase price, leaving about that sum ($635) due. Greer executed his bond for title to Wright. Subsequently, in Octo-

ber, 1883, Wright, being unable to make the second payment, requested appellee to do so, and transferred to him the bond for title; and a deed was also executed, in November, 1884, to appellee by Greer, conveying to him the land, subject to an agreement then entered into between appellant and appellee, the nature of which is revealed and will be better understood by the following extract from the testimony of appellee:

"At that time Wright (appellant) was running a shingle machine and Campbell was advancing him his supplies, etc., he (Wright) shipping the shingles and turning the proceeds realized from their sale over to me. He kept drawing on me for supplies, and repairs for his machinery, so heavily as to keep in my debt. The shingle machine was on the land, and one Walker Fore was endeavoring to get control of the Greer note to sell out appellant by foreclosure, etc. Appellant, knowing this, urged me to help him and take up the note and take the deed in my name. I agreed to do so, and paid the note ($625), and the deed was executed to me. It was further agreed, that the dealings between plaintiff and defendant should be as before; that I should make advances to him and keep an account with him for the land and supplies, applying the proceeds of the sale of the shingles and all payments to the satisfaction of claims and demands of every kind against defendant except the land debt, and that the debt for the land was to be paid last; and when all debts of every kind were paid, plaintiff was to make a deed to defendant for the land."

It is also made to appear, from a statement of an account of the dealings between appellant and appellee, that on January 24, 1884, there was a balance due appellee from Wright of about $1601. Among the items charged to appellant is the "cash paid for the Greer land," amounting to $625. What amount of this balance is carried forward to the account of February 1, 1886, does not clearly appear; but it is not controverted that this last account shows a balance due appellee Campbell from Wright of $260.60, which is the amount for which the note sued on was executed. There were payments made by appellant on the account dated January 24, 1884, which he was properly credited with, and applied under the agreement to the satisfaction, first, of all debits other than the Greer land debt. That the parties had the right to make such application of the payments made by Wright on the account is a familiar rule. It is true that there are payments made by the appellant which, if applied directly to the Greer note of $625, would liquidate and satisfy that particular item debited against him. Such would be the effect of the application to the Greer land note debit of the $700 payment made by appellant on the account realized from the sale of the land certificate to one Potter, and which appellant contends should be so applied. But under the contract as testified to by appellee, such an appropriation of that sum could not be and was not made. It necessarily results from the contract as stated by Campbell, and on

which the verdict was predicated, that whatever balance was disclosed by the account of the mutual transactions between the parties against Wright embraced a part of the Greer land debt, which was the "last to be paid," and was under the terms of the original agreement between them to be a lien on the land.

But independently of this view of the case, and admitting, as claimed by appellant, that the $700 payment before alluded to cancelled specifically the Greer land note for $625 charged to him in the account, we are unable to see that he would be in any better condition. There is no controversy as to the correctness of the balance exhibited by the account of February 1, 1886 ($260.60), for which the note sued on was given. That note, executed by appellant, and the deed of the same date by appellee conveying to the former the land, evidence on the face of each a contract between the parties that a lien should be retained on the land for the payment of the amount of the note. The title to the land was in Campbell. Wright retains the land by virtue of the deed from Campbell reciting the fact that the note is unpaid and is a lien thereon, and which Campbell testifies was given for that amount due on the land. That the parties could, under the facts in this case, after the balance of the account was ascertained, include such balance in a note and by contract make it a lien on the land, whether any part of the balance was a lien or not originally, we think there is no doubt. In Busby v. Bush, 79 Texas, 658, the facts were as follows, as stated in the opinion: ."The notes, according to the weight of the testimony, were executed for the balance of the purchase money remaining after deducting the value of the cows and calves, and the defendant to secure the payment of said notes executed and made in the notes a lien on the land." In that case, under such proof, the court say: "Whether we regard the lien as technically a vendor's lien or simply a contract lien in writing executed by the defendant and created on the land, still we are unable to perceive any valid reasons why the notes and the lien can not now be enforced according to the contract between the parties, and which was made by the defendant in writing." P. 664. It is believed that this language applies with peculiar force to the facts before us.

We conclude that there was no error in foreclosing the lien on the land described in the petition; and this being the only question presented for our decision, we think the judgment should be affirmed.

*Affirmed.*