JAMES I. WALSH V. T. W. FORD, RECEIVER.

Decided December 7, 1901.

**1.—Vendor's Lien—Homestead—Loan—Superior Title.**

Where an owner of land contracted to sell it to defendant for an agreed. price, and as part of the same transaction to advance defendant $1200 with which to build a house thereon, notes to be given for both amounts, the $1200· to be made a first vendor's lien and the price of the land a second vendor's lien, and the $1200 was advanced and used as agreed, $500 of it being so used before the execution of the deed which retained the liens as agreed, the total sum was in effect given for the property: defendant took it burdened with a vendor's lien for the total amount, and could not assert homestead rights in the property against the superior legal title remaining in the seller until all the money was. paid.

**2.—Same—Estoppel—Rescission.**

The seller was not estopped to rescind the sale by reason of the fact that he had collected the price of the land and part of the notes given for the $1200· advanced, and had permitted the purchaser to make improvements.

**3.—Same—Superior Title Asserted—Return of Purchase Money Paid.**

Where the action was not to rescind, but to recover the property by virtue of the seller's superior legal title, and defendant did not tender the balance due and ask to be permitted to redeem, he was not entitled to a return of the pur-· chase money paid by him.

**4.—Res Adjudicata.**

See evidence held not to sustain a plea of res adjudicata, the parties and issues in this suit not being the same as in the former suit, and the issues in the former suit not appearing to have been determined there.

Appeal from Dallas. Tried below before Hon. Richard Morgan.

*J. C. Muse,* for appellant.

*A. T. Watts,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Suit in trespass to try title by T. W. Ford, receiver of the J. B. Watkins Land and Mortgage Company, filed February 6, 1900, against James I. Walsh as defendant. The receivership being terminated pending this suit, the J. B. Watkins. Land and Mortgage Company substituted itself as plaintiff herein in. lieu of T. W. Ford, receiver, and thereafter prosecuted this suit as plain-· tiff for its own benefit. Trial by jury resulted in a verdict for the J. B. Watkins Land and Mortgage Company for the property in contro-· versy, consisting of a house and lot in the town of Oak Cliff, the ver-· dict being directed by the court under a peremptory charge. Judgment. in accordance with the verdict. The defendant, James I. Walsh, has appealed.

The issues presented by the answer were: (1) The petition of T. W. Ford, receiver, alleged that on the 30th day of March, 1889, M. J. Dart conveyed the lot in controversy to James I. Walsh. That the· purchase money was evidenced by ten promissory notes executed by Walsh to Dart, each for the sum of $120, of date March 30, 1889, and

payable to the order of M. J. Dart on or before 24, 30, 36, 42, 48, 54, 60, 66, 72, and 78 months from date, respectively, each bearing interest at 9 per cent, payable semi-annually, and alleged that said deed expressly reserved a vendor's lien to secure the payment of the notes. That thereafter, before the maturity of said notes, M. J. Dart indorsed each of said notes to the J. B. Watkins Land and Mortgage Company and it became the owner of the same. That Walsh has paid five of said notes and that five are unpaid. That on August 28, 1896, M. J. Dart conveyed the legal and superior title in him by virtue of said vendor's lien notes to the J. B. Watkins Land and Mortgage Company, who thereby became invested with the legal title to the property. That on January 25, 1900, the receiver, Ford, declared the sale rescinded because of the nonpayment of the last five of said notes. Then followed the usual allegations of trespass to try title, and the allegations that a dwelling and outhouses were situated upon said lot, alleging the rental value of the property to be $15 per month.

(2)  The defendant, by first amended original answer filed June 5, 1900, pleaded a general denial and not guilty, and in paragraphs 4 and 5 of said answer alleged, that on and prior to March 1, 1889, M. J. Dart was the owner of the lot described, and that on the said date the defendant, Walsh, contracted with him for the purchase of the lot for the sum of $550, purchase price thereof, and also contracted at the same time for a loan of $1200 from said M. J. Dart, the agent of the J. B. Watkins Land and Mortgage Company, to be secured upon said lot contracted to be purchased. That it was agreed that the borrowed money in the sum of $1200 should be a first lien upon the lot, and that the $550 purchase money for the lot should be a second lien thereon. That thereafter, on March 30, 1889, M. J. Dart conveyed the lot to the defendant, Walsh, in accordance with said agreement, and that the said Walsh executed to M. J. Dart a note for $550, the purchase price of the lot, which was made a second lien by the terms of the deed, the same payable to M. J. Dart, and also executed the ten notes of $120 each described in the plaintiff's petition, which said notes were executed in order to secure the $1200 which had been loaned and agreed to be loaned by the said Dart to the said Walsh, which said notes were by the terms of the deed constituted a first lien upon the lot. That, in fact, the $550 note represented the purchase price of the lot, and that said ten notes for $120 each was but the method employed by M. J. Dart in securing the loan of the said $1200 aforesaid, and, in fact, constituted but a mortgage lien as security for their payment, and in no sense represented a part of the purchase money. That M. J. Dart was the general agent of the J. B. Watkins Land and Mortgage, engaged in lending money in Texas, and that said Dart, acting as the agent of said company, loaned to the defendant Walsh $1200 out of the money of said company, and was acting for said company as its agent in making said loan, and in order to secure said loan procured the execution of ten notes for $120 each by the defendant, which notes were to be transferred to

said company to secure it in said loan aforesaid, and was but the method pursued and adopted to evidence and secure the loan, and that said Dart did in fact transfer said ten notes to the J. B. Watkins Land and Mortgage Company, which company had full notice and knowledge that said ten notes formed no part of the purchase price of the property and were but a mortgage to secure the repayment of the money so loaned. That the said Dart, in making said loan and transferring said notes to the company, was acting as its agent, with full authority, and that said company had full knowledge and notice that said ten notes represented a loan and were not vendor's lien notes, in fact, when the company acquired them; and that, in fact, said notes represented only a mortgage lien on the property. That the first five of said ten notes were duly paid off. That the first of the five unpaid notes matured September 30, 1893, and the last matured September 30, 1895, and were barred by limitation more than four years prior to the institution of this suit. That the notes, not being for purchase money, did not constitute a vendor's lien, and that no superior title was vested either in Dart or said company by virtue of said notes which would enable the plaintiff to rescind the sale or assert the superior title to the property. That the defendant Walsh had been continuously in possession from a time prior to the date of said deed of March 30, 1889, and said notes being barred by limitation the plaintiff was not entitled to a foreclosure of any mortgage lien by reason of the notes.

(3) In paragraph 6 of said answer the defendant pleaded homestead, alleging that he was a married man and the head of a family on and prior to the 1st of March, 1889, when he contracted to purchase said lot from Dart, and then designated it as his homestead and proceeded to improve it for occupancy as such with the $1200 borrowed as heretofore alleged, by erecting a dwelling house and other improvements thereon, and at the time of the execution of said deed on March 30, 1889, had expended of said $1200 not exceeding one half thereof in such improvements, and immediately upon the execution of the deed occupied the property as his homestead and has so occupied it continuously as such, having no other homestead, and that said property did not exceed in value $2000, and was situated in Oak Cliff, Texas.

(4) In paragraph 7 of said answer the defendant pleaded that the $550 vendor's lien note representing the purchase money of the lot had been transferred to said company, together with the ten notes described. That he had paid to said company the $550 note and the first five of the $120 notes, aggregating $1150, besides the interest from date to their respective maturities. That the said company ratified and confirmed the purchase of the property by the defendant, and that he had expended $200 in other improvements, and that the company were estopped, having confirmed the sale and collected the money alleged, from disaffirming the sale and asserting title to the property, and that their remedy was by foreclosure on their mortgage lien. In the eighth paragraph of his answer the defendant pleaded an estoppel

against the plaintiff, for that the issue of title, as alleged in the petition, is settled and res adjudicata, because on June 8, 1898, J. B. Watkins, for the use and benefit of the J. B. Watkins Land and Mortgage Company, and of the plaintiff as its receiver, filed suit against this defendant, James I. Walsh, in trespass to try title to recover the same identical property in controversy in this suit. That the same issues in controversy in this suit were in controversy and presented in said cause No. 17,191, and judgment rendered adversely to the said J. B. Watkins, who was acting for the J. B. Watkins Land and Mortgage Company, and the receiver herein, and appellant by his trial amendment further alleged that J. B. Watkins was the alter ego of the J. B. Watkins Land and Mortgage Company and did business under that name and owned all of the stock, assets and property of the J. B. Watkins Land and Mortgage Company. The defendant prayed for cancellation of the notes by reason of limitation and removal of cloud from his title, and in the alternative for an adjustment of equities as set forth in his answer. By proper proceedings the J. B. Watkins Land and Mortgage Company was substituted as plaintiff in lieu of T. W. Ford, receiver. The special demurrers numbers 1, 2, 3, and 4 of the J. B. Watkins Land and Mortgage Company contained in its first supplemental petition filed December 1, 1900, were sustained as to paragraphs 4, 5, 6, 7, and 8 of the defendant's first amended original answer. The court charged the jury peremptorily to return a verdict for the plaintiff.

1. Appellant groups his first and second assignments of error. In the first he complains of the action of the court in sustaining the special demurrer to the fourth and fifth paragraphs of his answer. In the second he complains of the action of the court in refusing to permit him to prove under his plea of not guilty that the notes described in the petition were not for purchase money but were in fact for a loan of the J. B. Watkins Land and Mortgage Company, and that said vendor's lien notes was a method employed to secure said debt by said company with full knowledge of the facts, and that defendant has had continuous possession of said property since the date of said notes.

The averments in paragraphs 4 and 5 of the answer show that on March 1, 1889, M. J. Dart was the owner of the lot described in the petition, and on that date he contracted with the defendant to sell him the land for $550, and at the same time and as a part of said contract he agreed to loan defendant $1200, said Dart at that time being the agent of the J. B. Watkins Land and Mortgage Company. That in order to secure said purchase money and said borrowed money it was agreed that said $1200 should be a first vendor's lien upon the lot and the $550 should be a second lien. That in accordance with this agreement, said M. J. Dart conveyed said lot by warranty deed to the defendant, which said deed is of record in book 104, pages 148-150, records of deeds of Dallas County, Texas, to which reference is made. That the

consideration recited in the deed is certain notes, to secure which a vendor's lien is specially retained. All of said notes bear interest at the rate of 9 per cent per annum until maturity, and 12 per cent after maturity until paid. The last ten notes were, by the deed, made a first vendor's lien upon the lot. There was no allegation of fraud or mistake in the recitals in the deed. Thus it will be seen, from the averments of the answer, that the deed through which the defendant derives title to the property requires the payment of the notes described therein, and expressly retains a vendor's lien to secure the same. The deed expressed the terms upon which defendant took title. Under its terms defendant took title to the lot burdened with the liens specified in the deed. Having accepted title under these terms, he can not now be heard to attack the recitations in the deed for the purpose of defeating the notes and the lien. Paragraphs 4 and 5 of the answer were insufficient to defeat plaintiff's cause of action, and the court did not err in sustaining exceptions to the same. Berry v. Boggess, 62 Texas, 241; Wright v. Campbell, 82 Texas, 391; Doty v. Barnard, 92 Texas, 104; Jones v. Male, 62 S. W. Rep., 827. If, however, there was error in sustaining the exception, then, under the facts shown in the record, such error was harmless. The defendant had pleaded not guilty, and under this pleading he tendered the evidence which he sought to have admitted under the defenses specially set out in paragraphs 4 and 5 of his answer. The court declined to admit the evidence, to which the defendant excepted and took his bill of exceptions, and has preserved therein the testimony sought to be introduced. Said testimony is to the effect: That on March 1, 1889, M. J. Dart owned the lot in controversy and was at that time the agent of the J. B. Watkins Land and Mortgage Company. On that date it was verbally agreed between said Dart and appellee, Walsh, that Dart would sell the lot to Walsh for $550 and loan $1200 to Walsh with which to erct a house on the lot;; that the $1200 wae to be secured by a first vendor's lien upon the lot and the $550 was to be secured by a second lien thereon; that in accordance with the agreement Walsh contracted for the erection of a house upon the lot and Dart advanced the money as payment was required for the erection of the same; that at the time the deed was made Dart had advanced about $500 which was used in the payment for said house. After the deed was made the balance of said $1200 was advanced by Dart and paid out by appellant for the erection of said house, which was completed about April 1st, on which date Walsh with his family moved into said premises and they have since occupied the same as their homestead. Walsh was, on March 1, 1889, a maried man and the head of a family, and designated the lot as a homestead when he made the verbal contract. That in pursuance of said agreement Walsh executed the notes recited in the deed, and a deed of trust on the lot to secure the same. Dart executed a deed for the lot on March 3, 1889, in accordance with the verbal contract. The deed recited that it was made in consideration of the payment of

the notes which are fully described. The mortgage company had full knowledge of all these facts.

It was admitted that all the notes described in the deed had been paid, except six for $120 each, maturing respectively, 48, 54, 60, 66, 72, and 78 months from the date of the deed. These notes were barred by limitation when the suit was instituted. It is conceded that appellant never had title to the lot prior to the making of the contract which culminated in the execution of the deed. In this respect this case is distinguishable from the case of Williamson v. Huffman, 47 Southwestern Reporter, 276, upon which appellant mainly relies. The evidence tendered shows that when the verbal contract was made it was agreed, as a part of the contract, that $1200 was to be loaned by the vendor, Dart, to the vendee, Walsh, for the purpose of erecting a house upon the lot; that notes were to be executed by Walsh for the $550 and the $1200, and a deed executed by Dart in consideration of said notes and a vendor's lien retained to secure the same. It further shows that this sum was advanced and used in constructing a house upon the lot, $500 being so used prior to the execution of the deed. These facts show that all the notes were in effect given in payment for the property. They represent the value of the property after Dart's money had been used to improve the lot. The parties so treated the notes and the deed expressly retained a vendor's lien on the property to secure all of the notes. Appellant's homestead rights were subordinate to his title under the deed. It follows that the evidence tendered by appellant to prove the allegations in paragraphs 4 and 5 of the answer did not make out a defense, and hence the sustaining the demurrer to said paragraphs, if error, was harmless. The action of the court in excluding this evidence is not reversible error, for the result must have been the same had the evidence been admittd.

2. It is contended that the court erred in sustaining the plaintiff's special exception to the seventh paragraph of the defendant's answer, wherein the defense of estoppel was interposed to the plaintiff's recovery. The contention being that appellee, having collected the original purchase price, $550, and the first five of the $120 notes for borrowed money, and permitted appellant to make improvements, was estopped to rescind the sale even though the unpaid notes should be held vendor's lien notes. There is no merit in this contention. The notes were executed by the defendant to Dart in part payment of the consideration stipulated in the deed, and by the terms of said deed were made a vendor's lien upon the property. Dart transferred the notes with the superior title to the property to the plaintiff. Defendant failed to pay the notes and now insists that they are barred by limitation. 2 Pom, Eq. Jur., sec. 805.

3. Again, it is insisted by appellant that the court erred in sustaining the special exception to the eighth paragraph of his answer, wherein he alleged that he had paid the greater part of the indebtedness set out in the deed and that plaintiff could not rescind the sale without

doing equity and tendering back the money paid. The suit is not to rescind but to recover the property on the ground that plaintiff has a superior title. Appellant did not tender the balance due and ask that he be permitted to redeem the land. He was not entitled to the return of the purchase money paid by him. Cattle Co. v. Boon, 73 Texas, 555; Price v. Moreman, 84 Texas, 601.

4. Appellant's seventh assignment of error complains that the court erred in peremptorily instructing a verdict for the plaintiff, for that, the evidence was sufficient to sustain the issue of estoppel and res adjudicata as presented in the ninth paragraph of his answer. The evidence showed that in 1898 J. B. Watkins filed a suit in trespass to try title against appellant for the lot in controversy, said suit being filed in the District° Court of Dallas County. The answer in that suit consisted of a general demurrer, general denial, and special answers setting up the same matters contained in the special answers in this suit, and further plead that the plaintiff in that suit relied on a trustee's sale made at the request of defendant, Walsh, and said sale had never been consummated, and the trustee's deed had never been delivered. The last defense was established and the court directed a verdict for the defendant, Walsh.

The suit at bar was brought by Ford, receiver for the J. B. Watkins Land and Mortgage Company, and is based on the superior title conveyed by Dart to the said company. The receiver was discharged during the pendency of the suit, and the company substituted as plaintiff. The parties to this suit are not the same as those to the former suit, and the issue in this suit was not the issue in the first suit, and hence was not determined therein. The judgment in that suit is not shown by the record. Cook v. Burnly, 45 Texas, 115; Guardin v. Dean, 49 Texas, 246; Horton v. Hamilton, 20 Texas, 611; James v. James, 81 Texas, 381; Nichol v. Dibrell, 61 Texas, 541; Philipowski v. Spencer, 63 Texas, 607.

We conclude that the evidence was insufficient to show an estoppel, or to sustain defendant's plea of res judicata, and hence the court did not err in instructing a verdict for the plaintiff.

We find no error in the record, and the judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.