DE BUSK et ux. v. JACKSONVILLE BUILDING. & LOAN ASS'N, Inc.

No. 2082.

Court of Civil Appeals of Texas. Eastland.

Jan. 17, 1941.

Rehearing Denied Feb. 7, 1941.

H. L. DeBusk, of Abilene, for appellants.

Norman, Stone & Norman, of Jacksonville, and Shook & Shook, of Dallas, for appellee.

LESLIE, Chief Justice.

The Jacksonville Building & Loan Association, Inc., sued Henry L. DeBusk and wife, Winnie Guffee DeBusk, to establish and foreclose a vendor's lien (purchase money) on lot 5, block 3, Ludwig Place Addition to the city of Kilgore, Gregg County, Texas. The defendants entered a general denial, pleaded homestead rights, etc. The trial before the court without a jury resulted in a judgment for the plaintiff for the indebtedness with foreclosure of the lien. The trial court made findings of fact and conclusions of law.

The appellants have based their appeal on the contention that their homestead rights in the lot accrued prior to the lien sought to be foreclosed, and, therefore, immune from foreclosure and sale by the plaintiff. In their brief, the appellants state their contention in this language: "It is deemed not expedient to set forth with particularity the pleadings of the appellee, for *it is admitted that unless appellant is correct in the contention of homestead dedication prior to the alleged lien,* that the pleadings and the evidence otherwise are sufficient to sustain the judgment rendered." (Italics ours.) This narrows the issue. The origin and the validity of the appellee's note and the lien sought to be foreclosed arise from the following circumstances:

M. W. Laird owned the lot and residence and the DeBusks, being desirous of acquiring the same for a home, evidently found it convenient and necessary to purchase it on terms other than by down payment of cash in full. This is evidenced by a letter of August 30, 1938, addressed by said Henry L. DeBusk to S. S. Laird, the father of M. W. Laird, who was acting in some of the negotiations for the son, at the time a student in the University of Texas. That communication sets forth in general terms the manner in which the deal was to be consummated. The letter makes seven specifications: (1) $2,500 was to be the total consideration; (2) the DeBusks were to have permission to move into the place "at once", or as soon as possible; (3) they were to be privileged to make some improvements for "the convenience of the homestead"; (4) they were to make application for a loan with the Jacksonville Building & Loan Association; (5) Laird was to furnish an abstract to be submitted to the Loan Association; (6) the amount of the loan, if any, was to constitute the "cash consideration" paid down, and (7) if such loan turned out to be less than $2,500 the DeBusks were to pay the difference.

With such general understanding the negotiations proceeded and the DeBusks made application to the Loan Association for the contemplated loan of $2,500. The application stated: *"The money* hereby secured

and applied for *is for the purpose of purchase price secured with usual vendor's lien * * * in favor of vendor same to be merged in the proposed loan."*

Then follows provisions as to improvements, insurance, etc., and in paragraph 6 it is stipulated: "Title to said property is now vested in M. W. Laird, acquired by deed from Mrs. Julia Stanley et vir on July 1, 1937, purchase price paid $2500 cash."

Paragraph 14 of the application is as follows: "Is this property your homestead? Yes. If not, give full legal description of your homestead here: I bought this place for a home for my family consisting of a wife and two little girls. *The loan sought is $2500 of the purchase price, making a legal vendor's lien which will be merged in the loan."*

Following the applicants' answers to 31 different questions, the application contains the further statements: *"The foregoing statements are made by me for the purpose of securing this loan* and I hereby warrant same to be true and correct * * *. I will furnish complete and satisfactory abstract of title to said premises, same to be held by you until said loan is fully repaid; I agree to execute, or cause to be executed, all instruments which may in the opinion of your attorney be necessary to secure said loan, pay all expenses of making same * * *. *I agree that you shall be subrogated to all the liens taken over or discharged by you from the proceeds of this loan* and the final closing of this loan shall be in your uncontrolled discretion. * * *"

On the trial the respective litigants, through their attorneys, stipulated as follows:

"It is agreed by and between the counsel for the parties in this suit that the *deed records* in Gregg County, Texas, *show that the legal title to lot 5 block 3* of the Ludwig Place Addition to the city of Kilgore, Gregg County, Texas, *was in M. W. Laird and wife, Mrs. M. W. Laird, on October 20 (10) 1938 upon which date M. W. Laird and wife, Mrs. M. W. Laird, conveyed said property to Henry L. DeBusk and wife, Winnie Guffee DeBusk,* by deed of said date.

"*It is agreed* by and between the parties, plaintiff and defendants, through their respective attorneys of record, that at the time of the institution of this suit, *that the defendants, and each of them, were in default in the payment of the monthly payments on the indebtedness due the plaintiff* for a period of more than 60 days, and that after said default and before the institution of suit the plaintiff had exercised its option and had declared all of said indebtedness due and unpaid, subject to proof of the exact amount due."

The deed of October 20 (10), 1938, by which the Lairds conveyed said property to the DeBusks, recites a consideration of $2,500 evidenced by two promissory vendor's lien notes, payable to the order of M. W. Laird, the first for $1,800 and the second for $700, bearing interest at 7% per annum, etc. These instruments are in the usual form of purchase money vendor's lien notes, containing, among others, the stipulation: *"This note ($1800) is this day given by the undersigned as part of the purchase price for said mentioned property;* and it is understood and agreed that failure to pay this note as above promised or any interest thereon when due shall at the option of the holder of said note mature said note and it shall at once become due and payable, and the *vendor's lien or deed of trust lien herein mentioned, either or both, shall become subject to the foreclosure proceedings* at the option of the holder."

The $700 note was made a second lien, or inferior to the $1,800 note.

Following the execution and delivery of these notes by the DeBusks, M. W. Laird and wife, the owners of the same, sold and transferred the $1,800 note, *with lien securing it,* to the plaintiff, Jacksonville Building & Loan Association, a corporation. In addition to the statement that they executed and delivered the note, the transfer recites *"* * * said note constituting a first lien on the property hereinafter described * * *"* and that it was *"secured by the vendor's lien therein expressed * * *."*

In addition to the liens noticed, the DeBusks on November 3, 1938, executed to the Building & Loan Association a (deed of trust) note and a deed of trust to secure the payment of the $1,800 purchase money note, according to the terms of the loan. Among other provisions that deed of trust note carried the following:

"This note is given in *renewal* and *extension* of the following described existing liens: Being *that certain vendor's lien note in the principal sum of $1800 constituting*

a first and superior lien dated October 10, 1938, executed by Henry L. DeBusk and wife, Willine Guffee DeBusk, to M. W. Laird, or order, * * * Which said note is fully set out and described in that certain warranty deed dated *October 10, 1938,* executed by *M. W. Laird and wife,* Mrs. M. W. Laird, to Henry L. DeBusk, and wife, Winnie Guffee DeBusk * * *.

"This note (deed of trust note) is secured by deed of trust of even date herewith, executed by the undersigned [DeBusks] to William E. Stone, Trustee" for the Loan Association.

The deed of trust of date November 3, 1938, is in the usual form conveying the property in question, etc. It contains a copy of said "deed of trust note" and recites:

"*This note is given in renewal and extension of the following described existing liens: Being that certain vendor's lien note in the principal sum of $1800 constituting a first and superior lien dated October 10, 1938, executed by Henry L. DeBusk and wife, Winnie Guffee DeBusk, to M. W. Laird, or. order,* etc. * * *

"And it is distinctly understood and agreed that *the note herein* and hereby *secured is given for money this day advanced by the Jacksonville Building & Loan Association,* a corporation, * * * *taking up, purchasing, renewing and extending the above mentioned indebtedness and it is also understood and agreed that the taking of this deed of trust shall in no manner or way waive, affect, release or impair the validity of the liens offered securing the payment of the same, but shall remain in full force and effect until the full and final payment of the note herein and hereby secured, and the said Jacksonville Building & Loan Association, its successors or assigns, are hereby subrogated to all liens, right, title, interest and remedies under and by virtue of any and all of the above mentioned liens and shall have the absolute and uncontrolled right of application of payments made thereon* * * *.

"*It is further agreed* and stipulated that *the security herein* and hereby provided *shall not affect or be affected by any other or further security taken* or to be taken *for the same indebtedness or any part thereof; and the said party of the first part hereby declares that the property hereinbefore mentioned and conveyed to the party of the second part forms no part of any* *property by them owned, used, occupied, on claimed as their homestead* or as exempt from forced sale under the laws of the State of Texas, *and disclaims and renounces* all and every claim thereto under any such law or laws."

The trial court made rather extensive findings of fact and conclusions of law. Among these, he finds that the plaintiff is the owner of the $1,800 note and lien, and that it acquired the same before maturity, paying a valuable consideration therefor, and "without notice of any infirmity or defect in the title of the transferrors of said debt and lien and without notice of infirmity or defect in said debt and lien;" that the plaintiff had no notice of any kind or character of the negotiations between the DeBusks and S. S. Laird, the father of M. W. Laird, who was at the time absent in Austin. That the DeBusks moved into the residence, etc., under an arrangement with the father and in contemplation of a subsequently consummated deal.

Obviously, this is a suit to foreclose the original vendor's lien, reserved and given to secure the payment of the original purchase price in suit. The court's findings of fact are abundantly supported by the testimony. These, plus the undisputed testimony, in our judgment, warrant and require the judgment rendered by the trial court. The principles involved are so elementary that it would appear to be unnecessary to lengthen the opinion by a discussion of the same. This sufficiently disposes of all contentions presented.

However, under the three-cornered negotiations between the owner of the land, the purchaser of the property and the Loan Company, furnishing the cash consideration, it was the express understanding that the Loan Company was to have a lien upon the property purchased to secure the cash advancement and such lien was in fact executed by appellants. There would seem to be no ground upon which to doubt this interpretation of the record. The appellee acquired the original note and vendor's lien held by Lairds. Such note and lien were transferred directly to the appellee and they were renewed and extended for the benefit of appellee when appellants executed the deed of trust and note representing the original purchase money consideration. Under such circumstances the vendee (appellants) could not acquire in the property any homestead rights superior to such

original purchase money vendor's lien. Art. 16, sec. 50, Const. of Texas, Vernon's Ann. St.; Art. 3839, R.S.1925; Floyd v. Hammond, Tex.Com.App., 268 S.W. 146; Woods v. West, Tex.Com.App., 37 S.W.2d 129; Berry v. Boggess, 62 Tex. 239; Kangerga & Bros. v. Willard, Tex.Civ.App., 191 S. W. 195; Walsh v. Ford, 27 Tex.Civ.App. 573, 66 S.W. 854; Jones v. Male, 26 Tex. Civ.App. 181, 62 S.W. 827; 22 Tex.Jur. p. 294, § 206. Simply stated, and as held in Woods v. West, Tex.Com.App., 37 S. W.2d 129, 132: "Until purchase money for property is paid, the purchaser has no such interest therein as would support a homestead claim against the person who advanced the purchase money under the agreement whereby he was to have a lien."

The fact that the appellants may have occupied the property somewhat in advance of the consummation of the deal and before they received their deed to the property constitutes no obstacle to the appellee's right of foreclosure under the circumstances detailed. Curtis v. Speck, Tex.Civ.App., 130 S.W.2d 348, writ refused; Doak v. Casner, Tex.Civ.App., 101 S.W.2d 1033, writ refused; Smith v. Clark, Tex.Civ.App., 266 S.W. 518. From the Curtis-Speck opinion [130 S.W.2d 350] we take the following:

"Defendant contends that since the property in question was occupied by him as a homestead, under a contract of sale prior to its actual purchase and prior to the execution of the purchase-money notes sought to be foreclosed, that he had acquired a homestead right therein superior to the vendor's and deed of trust liens retained to secure the payment of said notes. We cannot sustain this contention. The rule has been definitely established in this state that until the purchase money for property is paid, the purchaser has no such interest therein as will support the homestead right against the person to whom such purchase money is due. 22 Tex.Jur. p. 296. It is further the established law in this state that where a vendor's lien is retained in the purchase of property the homestead plea is inadmissible in the absence of pleadings under oath that the recitations in reference to said lien were induced through fraud or mistake.

"This rule has been recently reaffirmed by the Supreme Court in the case of Gregory v. Ward, 118 Tex. 526, 18 S.W.2d 1049, wherein it was held that evidence from the probate records showing that property was a homestead was not admissible in a suit to enforce a vendor's lien."

■ The testimony and the findings of fact refute any claims that the original vendor's lien was ever waived. The rule with reference to such (under the record before us) is very well stated in 43 Tex. Jur. p. 449, § 257, as follows:

"But the lien is not waived when it is apparent that the parties intended it to continue, either as primary or collateral security for the debt; and it is competent to show such intention. It has been decided also that a lien is not waived by contracting for payment in goods instead of money, by failing to take a purchase money mortgage, by subsequently executing a new note with accrued interest in lieu of the original note, nor by substituting a third person for the vendor as payee in the note.

"Generally the burden rests upon the purchaser or one claiming under him to show a waiver by the vendor."

In § 259, of the same text, it is said: "On the other hand, a lien expressly reserved in the deed or purchase money note is not waived by taking a mortgage or trust deed, either upon the same or other property."

■ It is also a rule of law (see § 260, of the same text) that "the vendor's lien is not abandoned or waived by taking the promissory note of the purchaser for the debt."

■ It is further reflected that the appellants in contemplation of the ultimate acquisition of the property made certain improvements for the convenience of the home, but claim for such improvements would not defeat the original purchase money obligation or the lien securing the same. By election of the appellee, the instant suit resolved itself into one for debt and the establishment and foreclosure of the original vendor's lien. Young v. Harbin Citrus Groves, Tex.Civ.App., 130 S.W.2d 896; writ refused Branch v. Taylor, 40 Tex.Civ.App. 248, 89 S.W. 813, writ refused. In such cases, the applicable rule of law is as follows:

"Primarily, in the absence of any contractual provision on the subject, improvements made by a purchaser in possession under an executory contract become the property of the vendor, and remain so until payment of the purchase price and the passage to the purchaser of the vendor's legal or superior title to the property

as a whole. If the vendor neither defaults nor waives his legal rights, he is under no obligation to pay for the purchaser's improvements as a condition to recovery of the property.

\* \* \*

"Contrariwise, if the purchaser defaults in performance or refuses to perform, he may not ordinarily claim compensation." 43 Tex.Jur. p. 265, § 160.

In Moore v. Giesecke, 76 Tex. 543, 13 S.W. 290, 293, the rule was stated in this language: "We repeat what has already been said when we say that, when the vendor's suit is predicated upon the mere refusal of the vendee to pay the whole consideration contracted for, the facts that the vendee has paid part of the consideration, and made permanent and valuable improvements, coupled with possession of the property, *unaided by some other sufficient equity*, will not entitle him to recover for such purchase money or improvements. In such cases, when the vendor has neither waived his legal rights, nor committed any default, he cannot be involuntarily taxed with improvements made upon his property without his consent, or be made to pay a price for recovering it back."

The appellants' claim based on improvements is unaided by any "sufficient equity", as mentioned above. Neither the original vendor, nor his assignee, the appellee, has defaulted or waived the original vendor's lien. In fact, there are no pleadings presenting cross-action or plea in re-convention against the appellee.

There are different reasons why in a suit of this character no allowances are made for improvements or for purchase money paid: (1) The debt has been or will be credited with any payments made thereon and to the extent of such payments the amount necessary to redeem is reduced. (2) At any time up to and including the sale of the property under foreclosure the vendee has the right to pay the debt and take the land, together with the improvements thereon. (3) When the land is sold under such foreclosure, presumptively it will bring what it is worth, including all improvements, and the defendant in judgment, the vendee, received the excess over and above the judgment and costs. (4) Since the vendee had the right to pay the debt or judgment and keep the property, and since it is his own default which provokes the litigation leading to the judgment, sale, etc., there would seem to be no equity to adjust between the parties.

Further, and as elsewhere pointed out, the trial court has found that the appellee was a purchaser in good faith and for a valuable consideration. Neither was any tender made by the appellants in the trial court of any past-due and unpaid installment, nor of the total amount due and unpaid by virtue of appellee's election so to declare.

An all-sufficient answer to appellants' claim for improvements is also to be found in the trial court's tenth finding of fact wherein he finds " \* \* \* that all of said improvements were made before the execution and delivery of the deed to said property from M. W. Laird and wife to defendants (appellants) and before the negotiations between the defendants and the plaintiff for a loan, and I further find that at the time of the execution and delivery of the deed from M. W. Laird and wife to the defendants (appellants) full credit and consideration was given to the defendants for the value of the improvements placed by them on said property."

It is believed to be unnecessary to cite authorities that the person who pays for another a debt at his request which is secured by lien is subrogated to the lien which secures the debt, but see 22 Tex.Jur. 146, § 102, under the subject of Homesteads.

We have carefully considered the assignments presented by the appellants and their authorities in support of same, but we find the judgment to be the only one warranted by the record.

The assignments are overruled and the judgment of the trial court is affirmed.