## WOODS v. WEST et ux.
### No. 1434—5643.

Commission of Appeals of Texas, Section A.
April 1, 1931.

J. R. Norvell and J. C. Looney, both of Edinburg, for plaintiff in error.

F. W. Moran, of La Feria, for defendants in error.

SHARP, J.

Oswell West and wife, Clemmie West, instituted this suit in the form of an action of trespass to try title in the district court of Hidalgo county against W. A. Woods and G. C. Pinson, alleging, in substance, that they were the owners in fee simple of Lots H and I of subdivision of blocks Nos. 17, 20, and 21 in subdivision A of the lands of the La Blanca Agricultural Company's tract in Hidalgo county; that plaintiffs on or about the 16th day of May, 1928, executed a certain deed of trust upon lots H and I to G. C. Pinson, trustee, as a security for the payment of a certain promissory note in the sum of $528.10, payable to the order of W. A. Woods; that a part of the amount represented by this note was for the payment of certain attorney's fees due George L. Fryer of Paris, Tenn., for legal services rendered plaintiffs, etc.; that lots H and I constituted their homestead, and the note executed by them to Woods was not secured by lien on same. They also prayed for cancellation of the deed of trust given on lots H and I to secure Woods for the amount due him.

W. A. Woods, in addition to other pleadings, filed a cross-action against the plaintiffs and sought judgment for the amount of his note. He further alleged that the note described above was secured by a valid deed of trust lien on lots H and I above described; that at the time of the execution of such deed of trust the premises herein described constituted no part of the homestead of plaintiffs;

and that, if it should be found that said premises were impressed with the homestead rights, then that such deed of trust was superior to said rights, for the reason that the deed of trust was given to secure the purchase price of said tract of land; and defendant, Woods, prayed that said deed of trust be established as a valid, subsisting lien.

Defendant further alleged that on or about the 12th day of August, 1927, plaintiffs and defendant entered into a certain agreement whereby the plaintiffs agreed to convey to defendant Woods 117 acres of land, more or less, situated in Henry county, Tennessee, in exchange for a certain 10-acre tract in Hidalgo county, Tex., described as the west 10 acres, more or less, of block No. 158; that prior to that date plaintiffs had executed a certain contract whereby they agreed to convey a one-half interest in and to the Tennessee tract to George L. Fryer, which contract cast a cloud upon the title to that land; that defendant refused to accept the title to said Tennessee tract, whereupon plaintiffs agreed to give defendant a valid lien upon the Hidalgo county land and did execute an instrument whereby they agreed that defendant would have a válid lien upon the tract of land, which he had conveyed to plaintiffs to secure him against all claim asserted against the Tennessee tract of land, because of the contract they had with Fryer, this lien or indemnity agreement to remain in force for a period of four years; that, in consideration of this contract or lien, plaintiffs and defendant exchanged land and plaintiffs warranted the title to the Tennessee tract to defendant as being clear of liens or incumbrances, except for a $3,500 mortgage held by the Prudential Insurance Company; that the value of the Tennessee land was $4,500 and the value of the Hidalgo county land was $1,000; that, after the consummation of the deal, plaintiffs left Tennessee and came to Hidalgo county, and Fryer filed suit in the courts of Tennessee to establish his claims against the land, and defendant was forced to settle with him to clear the title to his land; that afterwards plaintiffs and J. C. Engleman entered into an agreement for an exchange of land, whereby plaintiffs agreed to exchange the west 10 acres to Engleman for lots H and I; that Engleman objected to the title to the west 10 acres because of the lien held by defendant, and that, in order to obtain a release of this lien, plaintiffs represented to Woods that they would transfer the lien to the property that they would acquire from Engleman, and in consideration of this agreement defendant released his lien upon the west 10 acres, and plaintiffs and defendant agreed that the amount due from plaintiffs to defendant was $528.10, which sum or indebtedness was placed in the form of a note, and they executed a deed of trust to secure same upon the

property that plaintiffs had received from Engleman. Defendant in his cross-action prayed for judgment establishing the amount of the note as a valid equitable lien upon the premises and that same be foreclosed.

The case was tried before the court without a jury. Judgment was rendered in favor of the defendant on his cross-action against plaintiffs for the sum of $595.43, but the court decreed that the deed of trust lien asserted by defendant against lots H and I should be canceled and plaintiffs recover title and possession of the lots as against defendant. Woods appealed to the Court of Civil Appeals at San Antonio, and the judgment of the trial court was affirmed. 21 S.W.(2d) 1090. Woods applied for a writ of error to the Supreme Court, which was granted.

We will refer to the parties as in the district court.

Woods, who was the defendant in the trial court, and plaintiff in error here, contends that, as he held a valid subsisting lien against the west 10 acres of block No. 158 to secure the payment of money he had expended in order to settle the Fryer claim against the Tennessee land, which was the sum of $467.-30, when he released his lien against the 10-acre tract under an agreement whereby he was to be given a lien upon lots H and I, he in fact contributed to the consideration paid for said lots under the agreement that he was to have a lien upon said lots for the amount so contributed and is therefore possessed of a valid equitable purchase-money lien against the lots to secure the payment of that amount.

West and wife contend that lots H and I constituted their homestead, and under the laws of this state the lien executed by them was invalid and unenforceable.

The trial court made the following findings of fact:

"I further find as a fact that after plaintiffs had moved to Hidalgo county, Texas, they undertook to make an exchange of the west 10 acres of Lot 158 hereinabove mentioned, to J. C. Engleman for other lands located in Hidalgo County, Texas, described as Lot 1 of the Re-Subdivision of Blocks 17, 20, and 21 of Subdivision A, and Lot H of Re-Subdivision of Blocks 17, 20 and 21 of Subdivision A of the La Blanca Company's tract; that the said Engleman objected to the title to said ten acres plaintiffs had acquired from defendant on account of the agreement entered into, and mentioned in finding No. 5, and requested plaintiffs to secure some character of release from the defendant W. A. Woods from the terms of said agreement, and that plaintiffs then undertook negotiations with the defendant Woods to secure a release of said agreement to the end that they might convey same to the said Engleman for the land hereinabove mentioned as Lots I and H

of the Re-Subdivision of Blocks 17, 20 and 21, and which negotiations finally resulted in the execution of the deed of trust hereinafter mentioned.

"I further find as a fact that after the plaintiffs had left the State of Tennessee and removed to Hidalgo County to use and occupy the Texas land, that the said W. A. Woods entered into some negotiations with the attorney G. L. Fryer, by the terms of which he settled with Fryer for his claim against the Tennessee land by paying to said Fryer a certain amount of money in approximately the sum of $400.00, and by paying another attorney who asserted some right in the contract, the sum of $50.00, and court costs of the suit pending against plaintiffs by Fryer, in Tennessee, and also charging up to plaintiffs certain moneys that he claimed to have advanced them to make a crop in Tennessee, which amounts total the sum of $528.10; that he, the said Woods, thereupon notified plaintiffs of the amounts that he had been compelled to pay out for the purposes above stated, and that plaintiffs then and there agreed to execute to him a note evidencing said amounts, and did, as of date May 12, 1928, execute such note, which said note was to become due and payable October 2, 1928, and contemporaneously with the execution of said note executed and delivered to defendant Woods a deed of trust lien upon 20 acres known as Lots I and H of the Re-Subdivision of Blocks 17, 20 and 21 that they acquired from Engleman in exchange of the lands that he had theretofore acquired from the defendant Woods."

The trial court gave judgment for defendant upon his cross-action against plaintiffs for the sum of $595.43, but further found as a matter of law that defendant did not have a lien against the two lots above described, because same constituted a homestead of the plaintiffs, and therefore was not subject to the lien claimed by defendant.

It is definitely settled in this state that the homestead of a family shall be protected from forced sale for the payment of all debts except for the purchase money thereof, or part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in the last case only when the work and material are contracted for in writing with the consent of the wife given in the same manner as is required in making a sale and conveyance of a homestead. No mortgage, trust deed, or other lien, on the homestead shall ever be valid, except for the purchase-money therefor or improvements made thereon, whether such mortgage or trust deed or other lien shall have been created by the husband alone, or together with his wife. Unless the facts of this case bring it under one of the exceptions contained in the Constitution of this state, it is not arguable, because the question is unques-

tionably foreclosed by article 16, section 50, Constitution of this state, and a long line of decisions.

The question presented here for decision under the facts alleged and developed is: Did the defendant Woods have a valid lien against lots H and I for the payment of his debt? We think so.

It is equally well settled in this state that:

(a) Where purchase money of land is advanced under oral agreement that the purchaser will execute a mortgage or give a lien as security, such agreement is enforceable in equity as a mortgage.

(b) Until purchase money for property is paid, the purchaser has no such interest therein as would support a homestead claim against the person who advanced the purchase money under the agreement whereby he was to have a lien.

In our judgment, the foregoing rules are fully supported by the following authorities: Floyd v. Hammond (Tex. Com. App.) 268 S. W. 146, 147; Johnson v. Portwood, 89 Tex. 235, 34 S. W. 596, 787; McCarty v. Brackenridge, 1 Tex. Civ. App. 170, 20 S. W. 997 (writ refused); Benavides v. Houston Ice & Brewing Co. (Tex. Civ. App.) 224 S. W. 385 (writ refused); Pipkin v. Bank of Miami (Tex. Civ. App.) 179 S. W. 914; Parker v. Bushong (Tex. Civ. App.) 143 S. W. 281.

Here there was an agreement for a lien, and, in fact a lien was executed, which in equity is treated as a lien for the purchase money, and, until such purchase money is paid, West and his wife had no such interest in the property as would support a homestead claim against Woods, the one to whom such purchase money was due. Floyd v. Hammond, supra; Roy v. Clarke, 75 Tex. 32, 12 S. W. 845, 847; Benavides v. Houston Ice & Brewing Co., supra; Mustain v. Stokes, 90 Tex. 358, 38 S. W. 758.

As fully sustaining the foregoing rules stated, we quote from some of the authorities:

Our Supreme Court in the case of Roy v. Clarke, supra, says: "The reason of the rule, that homestead rights cannot be asserted in a case like the present, is that no such rights are acquired as against the person to whom the purchase money is due for the homestead. This rule we understand has been long recognized in this state. Farmer v. Simpson, 6 Tex. 303; Stone v. Darnell, 20 Tex. 14; Flanagan v. Cushman, 48 Tex. 247. * * * Until the purchase money is paid, the purchaser has not such an estate as will support the homestead right against the person to whom such purchase money is due."

In Floyd v. Hammond, supra, in an opinion rendered by the Commission of Appeals, which was adopted as the opinion of the Supreme Court, it is said: "While an equitable mortgage lien upon real estate may not be created by parol, yet it is definitely settled that, where one furnishes money to another with which to purchase land, under an agreement that the purchaser will execute a mortgage or give a lien upon the property in the future to secure the money advanced, the agreement will be enforced in equity as a mortgage, on the theory that it would constitute a fraud against the lender if it were not enforced."

In the case of Black v. Rockmore, 50 Tex. 88, the Supreme Court says: "That the homestead right is subordinate to the vendor's lien has been held in that [Robertson v. Paul, 16 Tex. 472] and other cases, and has since been incorporated into our organic law. It has also been decided by this court that the mere fact that a new note was given for the purchase-money, or that it embraced other and different considerations, or that a mortgage or deed of trust was taken to secure the same, would not, of itself, necessarily defeat the vendor's lien as a conclusive presumption of law; but that they are questions of fact, to be decided from the circumstances of the * * * case. Swain v. Cato, 34 Tex. 395; Wasson v. Davis, 34 Tex. 159; Flanagan v. Cushman, 48 Tex. 241."

Applying the principles of the well-established foregoing rules to the facts of this case, it follows, therefore, that, to the extent of the purchase money furnished by Woods for lots H and I, there existed in his favor an equitable trust in the land to secure the same, and that such lien is valid. As to this, the deed of trust lien was exactly the same as the vendor's lien. It is undisputed that the title to the Tennessee tract conveyed by West and wife to Woods had partially failed; that West and wife recognized this fact and executed a lien on the 10 acres conveyed to them by Woods. The general rule is that a grantor or vendor of land has a lien on land sold to secure the purchase money. The rights of no third person intervening, under the law, Woods was entitled to a lien on the 10 acres conveyed by him to West and wife. For the express purpose of making the exchange of land with Engleman, West and wife obtained a release from Woods and agreed that his lien should be transferred from said 10-acre tract to lots H and I. Woods, by releasing the lien held by him on the 10 acres, allowed West and wife to exchange same at full value for lots H and I, upon the express agreement that Woods' lien would attach against lots H and I; therefore the rights or lien of Woods became a part of the purchase money paid by West and wife for lots H and I.

This state of facts indicates no intention of Woods to waive the right which the law gave him; on the contrary, West and wife recognized this right and executed a lien against

lots H and I in Woods' favor to secure his debt. In legal effect this was considered as part of the purchase price of the land conveyed by Engleman to West and wife. White v. Street et al., 67 Tex. 177, 2 S. W. 529.

Therefore, under the authorities above cited, West and wife could not evade the payment of the amount contributed by Woods for the purchase price of lots H and I by claiming the land as their homestead. To permit West and wife to evade payment of the amount contributed by Woods by refusing to establish a lien in his favor on lots H and I, because claimed as a homestead, would constitute a fraud against Woods. To so hold would be both unsound and unjust. The law does not sanction such a doctrine.

In our judgment, both the trial court and the Court of Civil Appeals erred in holding as a matter of law that the defendant Woods did not have a valid lien upon lots H and I above described.

Therefore, for the reasons herein stated, we recommend that both the judgments of the trial court and the Court of Civil Appeals be reversed, and this cause be remanded to the district court for another trial in accordance with this opinion.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.