Harley M. HITCHCOCK et al., Appellants,

v.

Mae Nixon Hitchcock CASSEL et vir.,
Appellees.

No. 10279.

Court of Civil Appeals of Texas.

Austin.

Jan. 19, 1955.

Russell G. Ferguson, Thomas F. Ryan,
Austin, for appellants.

Emmett Shelton, Austin, for appellees.

HUGHES, Justice.

This suit is between a mother and her
two children and involves the ownership of
a house and lot located at 4008 Burnet
Road in Austin, Travis County, Texas.
The mother, Mrs. Mae Nixon Hitchcock
Cassel, claims, and was awarded in a non-
jury trial in the court below, the entire

property.[1] The children, appellants Harley M. Hitchcock and Mrs. Jessie Mae Hitchcock Hogan, claim jointly an undivided one half interest therein. Their claim is based solely upon their status as heirs of their deceased father, J. B. Hitchcock, who died intestate July 26, 1943.

This suit was commenced by appellants as an action for partition and for an accounting, alleging the property to be owned one half by them and one half by their mother.

Appellee answered by claiming all the property basing her claim upon the five, ten and twenty-five year statutes of limitation, Arts. 5509, 5510 and 5519, R.C.S.1925, Vernon's Ann.Civ.St. arts. 5509, 5510, 5519, and upon estoppel en pais.

By trial amendment she pleaded that the property was her homestead[2] and therefore not subject to partition. Mrs. Cassel also filed a cross-action against Harley Hitchcock for debt. The principal material undisputed facts are these:

J. B. Hitchcock and appellee were husband and wife on and for many years prior to December 29, 1931, on which date W. B. Hitchcock, their adult son, entered into a contract for the purchase of the property in question. This son died December 16, 1933.

On March 19, 1934, such property was conveyed to appellee "a married woman" by general warranty deed.

On November 2, 1935, appellee sued her husband, J. B. Hitchcock, for divorce, alleging that he had abandoned her on or about September 20, 1930, and that there were no minor children. No property rights were alleged. Divorce was granted on February 5, 1936, the decree finding as true the allegations above mentioned. No adjudication was made as to any property or property rights.[3]

Appellee was living on the premises involved when the divorce was granted and she continued to reside there until 1946 since which time the place has been rented, off and on, and she has not made nor been asked to make, prior to this suit, any accounting of the rents.

Appellee never denied either of appellants entry on the premises and her daughter has stayed with her on numerous occasions for varying periods of time, some as long as two or three months.

Other material undisputed facts as well as the many disputed ones will be referred to hereafter only as required to properly dispose of this appeal.

The trial court, among other findings, found that J. B. Hitchcock, the father, had actual and constructive notice on February 5, 1936, date of divorce from appellee, that appellee was claiming the entire fee simple title in the lot as her separate property and estate and was claiming adversely to any interest which J. B. Hitchcock might be asserting at such time and that such facts were known to Mr. Hitchcock and appellants since such time.

The trial court also made findings as to the adverse possession of the property since February 5, 1936, and concluded that appellee had perfected title under both the five and ten year statutes of limitation.

Appellee has abandoned her claim that title has been perfected under the five year statute and we need notice only her claim of title under the ten year statute. Before doing so we will endeavor to clearly state our view of the law under the undisputed facts, above stated, as it relates to the status of the property.

■ The property belonged to the community estate of appellee and her deceased husband because it was acquired during their marriage by purchase and not by gift,

1. The parties were denied all other relief.

2. The claim of homestead has been abandoned by appellee and will not be further noticed.

3. Appellee married M. K. Cassel June 7, 1941.

devise or descent. Arts. 4613, 4614 and 4619, R.C.S.1925, Vernon's Ann.Civ.St. arts. 4613, 4614, 4619. The fact that the husband had abandoned appellee at the time of the purchase and paid no part of the consideration therefor is immaterial insofar as the community status of the property is concerned. Speer's Law of Marital Relations, Sec. 514, quoted in Freeman v. Pierce, Tex.Civ.App.Dallas, 250 S.W. 778.

■ To sustain her limitation plea appellee relies, in part, upon certain incidents which occurred prior to the divorce such as refusing her husband admittance to the house and her statements at the time but we will not detail these matters for the reason that neither spouse can claim adversely to each other, under Art. 5510, during the marriage. Hardin v. Hardin, Tex. Civ.App.Texarkana, 217 S.W. 1108.

■ Appellee and J. B. Hitchcock having dissolved their marriage by divorce became tenants in common of their community estate there having been no judicial partition in the divorce decree. Taylor v. Catalon, 140 Tex. 38, 166 S.W.2d 102.

■ The possession of a cotenant is presumed to be in his right as a cotenant and acts relied upon to establish an ouster of his cotenants and to start the running of limitations against them must be of such unequivocal nature and so distinctly hostile to their rights that the intention to disseize is clear and unmistakable. Condra v. Grogan Mfg. Co., 149 Tex. 380, 233 S.W.2d 565.

Besides possession of the property by appellee the only overt act subsequent to the divorce to be found in the record and upon which a finding of notice to cotenant J. B. Hitchcock of appellee's claim of ownership of the entire premises could be based is the following testimony of appellee:

"Q. After the divorce, did he (J. B. Hitchcock) have occasion to come back out there and have some words with you about this? A. He certainly did. He came back out one time, about six weeks after I got my divorce, something like that.

"Q. Just state what that conversation was at that time. A. He said, 'I guess Emmett Shelton is right. I don't have any part of this place.'"

■ It is to be noted that the statement made is not by the adverse claimant but that of Mr. Hitchcock only and what prompted its making is not disclosed. The record does not show what advice, if any, Mr. Shelton gave Mr. Hitchcock and we are in no position to appraise Mr. Hitchcock's meaning in making the statement attributed to him. We do know that it cannot be converted into a statement on the part of appellee that she was making claim of ownership to the entire house and lot. Possession alone being ineffective as notice no notice is shown.

■ Our opinion is that there was no evidence to support the court's finding and conclusion that appellee had perfected title to these premises by ten years adverse possession.

Appellee has a counterpoint to the effect that appellants are estopped to claim an interest in the property because of acts and omissions regarding it.

There is evidence that the property was encumbered and that there were delinquent taxes against it and that appellee had spent money on repairs. Also Mr. Cassel testified that he suggested to appellant Harley Hitchcock that he and his sister take the place and finish paying for it and that Harley said "he did not want any part of it. That was not any part of it his."

■ The conversation noted above was in 1942, prior to the death of J. B. Hitchcock. At that time appellants owned no interest in the property and Harley's statement to such effect was true. No estoppel can be based upon his refusal to accept a conveyance. This was a matter about which he had perfect freedom of contract. Furthermore the record is devoid of any evidence that appellee has been

208

or will be damaged by any act or statement by appellants which are made the basis of her plea of estoppel.

The judgment of the trial court will be reversed and judgment here rendered that appellants Harley M. Hitchcock and Jessie Mae Hitchcock Hogan be awarded jointly an undivided one half interest in the property the subject of this suit and that this cause be reversed and remanded as to all accounting features and that otherwise the judgment of the trial court is affirmed.

Affirmed in part, reversed and rendered in part and in part reversed and remanded.