Truett O. DILLARD et al., Appellants,

v.

Lorraine M. Samon DILLARD, Appellee.

No. 10799.

Court of Civil Appeals of Texas.

Austin.

Nov. 9, 1960.

Rehearing Denied Jan. 4, 1961.

J. Hubert Lee, Austin, Byrd & Davis, Austin, for appellants.

John W. Flanagan, R. E. L. Looney, Austin, for appellee.

HUGHES, Justice.

This was a divorce suit in which appellee, Lorraine M. Samon Dillard was awarded a divorce from Truett O. Dillard. The judgment also awarded appellee custody of Ronnie T. Dillard, age 5, Mark K. Dillard, age 4, and Steven G. Dillard, age 3, their children, made provision for the maintenance and support of such children, and adjudicated certain property rights of the husband and wife, the husband's father and mother, Mr. and Mrs. N. J. Dillard, and his brother-in-law, J. K. Pringle, all of whom were parties.

This appeal is taken by Truett O. Dillard and N. J. Dillard [1] only and is restricted to the adjudication of property rights.

Trial was to a jury. In accordance with its verdict, judgment favorable to appellee was rendered.

Appellants group their first, tenth, fifteenth and nineteenth points for briefing. They are to the effect that the real property designated as 2102 Winsted Lane was separate property of Truett O. Dillard, and was, at the most, subject to reimbursement in favor of the community, and the Court erred in not so holding and, alternatively, in not submitting this issue to the jury as requested; and that the Court erred in awarding appellee an undivided one half interest in the personal property located at this address.

---

1. We construe the deposit for costs in lieu of an appeal bond to have been made for the benefit of N. J. Dillard as well as for Truett O. Dillard.

The Trial Court adjudicated an undivided one half interest in the real property (2102) to be community and awarded appellee an undivided one fourth interest therein, the remaining three fourths interest being awarded to T. O. Dillard.

T. O. Dillard had been previously married and this property (2102) was purchased during such prior marriage and title was taken in his name. This marriage was dissolved by divorce in 1952. There is no evidence that disposition or partition of this property was made in that suit or otherwise until October 17, 1953, when Mrs. Charlotte Dillard, the first wife, made conveyance by deed of her interest in this property to T. O. Dillard, who at that time was married to appellee.

Appellant T. O. Dillard states that the property having been taken in his name prior to his marriage to appellee, that it is uncontrovertibly his separate property and "There is no necessity for argument on this phase of the case. * * *"

We disagree with appellant, being of the opinion that the undisputed evidence, as a matter of law, established the community nature of the one fourth interest awarded appellee.

■ It being shown that this property (2102) was acquired during the marriage of T. O. Dillard and Mrs. Charlotte Dillard, and was possessed by them when their marriage was dissolved, and nothing more being shown, such property presumptively became community when acquired and was at· the time of the marriage dissolution the community property of that marriage. Art. 4619, Vernon's Ann.Civ.St.; Sec. 307, Husband and Wife, Tex.Jur. Vol. 23. Rippy v. Rippy, Tex.Civ.App. Austin, 49 S.W.2d 494, writ ref.

Upon the dissolution of the first marriage, nothing else appearing, this property (2102) was jointly owned by the parties, each owning an undivided one half interest therein. Hitchcock v. Cassel, Tex.Civ.App., Austin, 275 S.W.2d 205, writ ref., N.R.E.

These same principles are applicable to the one half interest in the 2102 property held to belong to the community estate of the second marriage. It was acquired during such marriage. It was possessed by the husband and wife at the time this marriage was dissolved. It was community property of the second marriage.

With respect to the personal property located at 2102 Winsted Lane appellant, T. O. Dillard, states that there is no evidence that any of the furniture found there was placed in it during his marriage to appellee.

The Court equally divided the personal property located at this address between the husband and wife.

Appellant T. O. Dillard points to no evidence which would overcome or tend to overcome the presumption created by Art. 4619, supra, that this personalty being possessed at the time of divorce was community property.

■ For another reason, the division of this personalty is not shown to be erroneous. Appellee having been awarded the custody of the minor children of the marriage, the Court was within its discretionary authority in awarding one half of this property to appellee. No abuse of this authority is charged or shown. See Art. 4638, V.A. C.S., Hamm v. Hamm, Tex.Civ.App. Fort Worth, 159 S.W.2d 183, Tims v. Tims, Tex. Civ.App. Amarillo, 201 S.W.2d 865, writ dism.

Appellants' points second, eleven, sixteen and eighteen are similar to the points last discussed except that they relate to what is called the Lake Travis property and its contents. They are grouped for briefing.

The Trial Court found, in its judgment, that the Lake Place was community property, but that appellant T. O. Dillard had invested $2,800 of his separate funds in the property and was entitled to its recovery. The Court also set aside to appellee one half the personal property located at the Lake Place.

No issues were submitted to the jury by the Court as to the separate or community nature of this property, although appellant T. O. Dillard requested such issues.

We will dispose first of the division of the personalty by referring to and adopting here what we said concerning the division of the personalty found in the Winsted (2102) property. The controlling facts are the same here, as there, and our ruling is the same.

The Lake Place was bought under these circumstances:

Appellee and appellant, T. O. Dillard, were married July 4, 1953. The Lake Place was purchased March 26, 1954.

Appellant T. O. Dillard owned a house at 2101 Winsted Lane in Austin. This property was acquired before this marriage and was his separate property. Appellant sold this property, and while it was under contract of sale, and before he received its purchase price, he bought the Lake Place. He had expected to receive the proceeds of the Winsted property on April 1, 1954. In order to pay for the Lake Place, he borrowed $2,800 from the Austin National Bank on March 26, 1954. This loan was made, in part at least, upon the faith of the Winsted sale. By check issued March 25, 1954, appellant T. O. Dillard paid $2,800 for the Lake Place. On April 9, 1954, payment for the Winsted property was received in the amount of $3605.16, and on the same day appellant paid his loan to the Austin National Bank.

Appellant T. O. Dillard contends that the credit extended him by the Bank was not community credit, but was his separate credit.

An officer of the lending bank testified that, if necessary to collect the $2,800 note, the bank would have levied on any property, community or separate, of T. O. Dillard.

It is our opinion that the debt to the bank was a community debt, the proceeds community funds, and the property purchased community property.

We content ourselves, on this point, in citing an excellent opinion by Chief Justice Chadick of the Texarkana Court of Civil Appeals in Goodloe v. Williams, 302 S.W. 2d 235, writ ref.

Under this authority, and the cases cited in it, property purchased during marriage by either spouse on credit is community property unless an agreement exists that the separate estate of the vendee only shall be looked to by the vendor for satisfaction of the credit extended.

This same rule is applicable to property purchased during marriage with borrowed money. Speer Law of Marital Rights in Texas, 3rd Ed.1929, Sec. 430, XXI Tex.Law Rev. p. 41.

Applying this principle to this record, agreement on the part of the Austin National Bank to look only to the separate estate of appellant T. O. Dillard for repayment of the funds borrowed from it to purchase the Lake Place was essential to a finding or conclusion that this property was the separate property of T. O. Dillard.

No such agreement was proved or attempted to be proved. In fact, its existence was negatived by appellee.

In our opinion, the community nature of this property was established as a matter of law, thus dispensing with the necessity of submitting any relevant issues to the jury.

Appellants' third and twenty third points are grouped for briefing. They assert error in the Trial Court's action in refusing appellant N. J. Dillard leave to intervene in this cause to preserve his rights in Cause No. 115,504 pending in the District Court of Travis County, Texas, which was a suit of foreclosure on a $3,000 promissory purchase money note and lien on the property on the Bee Caves Road executed by appellee and her husband in favor of N. J.

Dillard, and the action of the Court in "impliedly adjudicating" the invalidity of the vendor's lien securing the $3,000 note.

The Bee Caves property was the homestead of the parties. The note and lien were introduced in evidence by appellant N. J. Dillard.

The only adjudication made by the Trial Court regarding this property was:

"* * * that the 'Bee Caves' place is the homestead, that it is community property, that Plaintiff and Defendant, Truett O. Dillard, each own an undivided one-half interest in said property, subject only to an outstanding indebtedness to the Austin Savings and Loan Association, assumed by Plaintiff and Defendant, Truett O. Dillard, when they purchased said property; and further that Plaintiff's undivided one-half interest in the 'Bee Caves' place, be and it is hereby set aside to her. Said 'Bee Caves' place is described as follows, to-wit: [Description omitted.] and further that the interest of Truett O. Dillard in the above named and described property is hereby set aside to the Plaintiff, Lorraine M. Samon Dillard, for the benefit, use and maintenance of the three children of this marriage until the youngest child shall reach the age of 21 years; * * *"

Appellee pleaded that her husband's one half interest in this property should be set aside for her use for life and that she should be awarded her one half interest in fee simple "subject only to a first lien" held by Austin Savings & Loan.

Appellant N. J. Dillard states:

"There was no evidence introduced with respect to the nonexecution of said $3,000.00 purchase money lien note, nor was there any sworn denial of its execution by Plaintiff. The absence of any evidence thereon and of any discussion thereof during the trial

of the case up to the time of the introduction of the note in evidence by Defendant, had led Defendant to believe that the Court was not going to pass on the validity of the $3,000.00 purchase money note and lien; it was Appellant's and his Counsel's belief that that issue was left out for adjudication in the 126 District Court. Nevertheless, the judgment of the Court appears to _ adjudicated, and therefor this ground of error must be urged."

It seems to be undisputed that T. O. Dillard borrowed $3,000 from his father N. J. Dillard with which to purchase the homestead, promising to execute a note for this amount and give a lien on the property when purchased, and that the $3,000 so borrowed was actually used in the purchase of this property.

■ Appellee does not disclaim that the judgment has the effect appellants fear. The only fault she finds with this note and lien is her own faulty acknowledgment of the lien. Conceding the acknowledgment to be defective, we do not believe this defect to be decisive of the substantive rights of appellant N. J. Dillard. Under the facts above stated, Mr. Dillard acquired at least an equitable lien on the homestead to secure the payment of his note under the rule stated in Woods v. West, Tex.Com. App., 37 S.W.2d 129, 132 from which we quote:

"It is equally well settled in this state that:

"(a) Where purchase money of land is advanced under oral agreement that the purchaser will execute a mortgage or give a lien as security, such agreement is enforceable in equity as a mortgage.

"(b) Until purchase money for property is paid, the purchaser has no such interest therein as would support a homestead claim against the person who advanced the purchase money un-

der the agreement whereby he was to have a lien."

■ We disrelish final disposition of the validity of this note and lien in the absence of pleadings concerning them and in the absence of a specific adjudication by the Trial Court as to their validity. It seems to us that if the Trial Court had intended to cancel this note and lien, he would have done so in less obscure language. We entertain such doubt that either the Trial Court or the parties considered these matters to be in issue that we have concluded to reform the judgment so as to exclude such note and lien from this suit.

Points four, nine, thirteen, fourteen, twenty six and twenty seven are to the effect that the Court erred in vacating the sale of the Lake property as evidenced by a deed from appellant T. O. Dillard to his brother-in-law J. K. Pringle on the ground of fraud, and in refusing to submit certain requested special issues on this phase of the case.

Appellants make other similar points with reference to the Court's action in setting aside deeds made by appellant T. O. Dillard to his father N. J. Dillard conveying the Winsted Lane property (½ interest in 2102), and the Lancaster property.

Appellant T. O. Dillard testified that immediately after learning that his wife had left him he drove to Beaumont for the purpose of delivering deeds to his father to the Lake and Lancaster places and a deed to his brother-in-law, J. K. Pringle, to the Winsted Lane property. The reason for this was, as he stated, that his wife had left him and he did not "want separate property tied up in a squabble."

Appellant arrived in Beaumont about 10:-30 or 11 p. m., past his father's bedtime, but his father, having been telephoned by appellant, was waiting up for him. He stayed with his father just long enough to deliver the deeds and received two checks,

one for $1,000 and one for $5,000. At the time these checks were delivered, N. J. Dillard did not have funds in the bank on which they were drawn to satisfy them.

After this transaction with his father, appellant, the same night, drove to Port Neches where Mr. Pringle gave him a $3,500 check for the Lake property. This check was not good when given.

The money to cover these checks was obtained from Mrs. N. J. Dillard. As soon as T. O. Dillard cashed the $5,000 check which his father had given him, he gave his mother the entire proceeds of such check and she used a portion of them to make a deposit to cover the Pringle check. All of the money obtained by T. O. Dillard from the three transactions was returned to his mother, except the sum of $1,000 which he retained.

The deed to Mr. Pringle was dated January 17, 1959; it was delivered February 14, 1959, in exchange for the $3,500 check. This divorce suit was filed February 16, 1959. This property, the Lake Place, had originally cost $2,800 and some six or seven hundred dollars in improvements had been spent on it.

Mr. Pringle testified that he and Mr. T. O. Dillard had discussed sale of the Lake Place in December 1958, and that he knew nothing of a contemplated divorce when he purchased the property.

Two witnesses as to value of this property testified, one placing a $5,300 value on it, and the other a value of $4,750.

As to the Winsted property, the $5,000 check was marked "pmt in full—2102 Winsted Lane Austin." This property was encumbered in the sum of $3,000.

This property had an appraised value of $9,800, including furniture.

T. O. Dillard bought the Lancaster Place for $4,446, in 1958. According to appellant Dillard, his father cancelled a $1,500 debt which he owed his father, assumed an

indebtedness of $3,000 against the place and gave·him $1,000 in cash, in payment for the deed to this property.

This place had an appraised value of $4,900.

Mr. N. J. Dillard testified that at the time of such purchase, he had no knowledge of the marital difficulties of his son.

Appellants requested and the Court refused submission of the following charges:

"That in transactions involving a conveyance of real property, there is a presumption that fraud does not exist unless the consideration received is unconsiderably low, and there is an intent to defraud.

   *    *    *    *    *    *

"That in order to find that defendant fraudulently conveyed the real estate herein he must have had the intent to defraud his wife of her interest in said real estate on February 14, 1959 when he made such conveyances.

"* * * you are instructed that to question a sale of community property by the husband on the ground of fraud against wife, the purchaser must be affected with notice of the fraudulent design and seller must have an intent to defraud."

The Court submitted these instructions on fraud:

"You are instructed that the husband has the right to convey his separate real property without the necessity of the wife's joinder or consent.

"You are instructed that the husband may, for valuable consideration, convey community real estate regardless of whose name it is in, without the joinder or consent of the wife, so long as such conveyance is not a fraudulent conveyance.

"You are instructed that the term 'fraudulent conveyance,' as used in this charge, means any transfer or conveyance of property where the object of said conveyance or the effect of said conveyance is to deprive another of a valuable property right or its intent is to avoid some duty or debt owing by the party making the transfer.

"You are instructed that in order to vitiate a sale of community property by the husband on the ground of fraud against the wife, the purchaser must be affected with notice of such fraud."

The Court then submitted issues inquiring if each of the sales complained of was a "fraudulent conveyance."

■ Considering the last requested instruction first, it clearly appears that the Court instructed the jury that purchaser must be affected with notice of the fraudulent design.

The question of the intent of appellant T. O. Dillard to defraud his wife, we believe is encompassed in the instruction given by the Court, copied above, as to the meaning of the term "fraudulent conveyance."

If the "object" or "effect" of a conveyance "is to deprive another of a valuable property right," it seems to us that the conveyance is made with the intention of defrauding such other person

Furthermore, we would hold, if required, that the intent of appellant T. O. Dillard to defraud his wife was established as a matter of law.

Mr. T. O. Dillard was an attorney. He knew when he went to Beaumont and Port Neches in the middle of the night to denude himself and his wife by inter-family transactions of all they owned without appreciable gain, which could be conveyed by his deed, that he and wife were separated and that divorce proceedings were not improbable.

Under these circumstances, the only purpose which these midnight machinations

could have had was to defraud appellee and place the property beyond her reach and the reach of their three minor children.

█ We find no error in the refusal of the Court to charge, as appellants requested, that there is no presumption of fraud unless the consideration is inadequate. See fraudulent conveyances, 20A Tex.Jur. p. 474-475, 662 where it is stated:

"Irrespective of the sufficiency of the consideration, a conveyance is fraudulent if made with a fraudulent intent which was participated in by the grantee or if the grantee had notice or knowledge of it."

"Further, it is erroneous to charge that fraud cannot be presumed, since it may be inferred whenever the circumstances are sufficiently strong to justify an inference."

All points relating to the cancellation of the deeds from T. O. Dillard to his father and brother-in-law are overruled.

█ The thirteenth point is that the Court erred in setting aside for the support and maintenance of the minor children the amount in excess of $100 per month received by appellant T. O. Dillard as a disability pension from the United States Government.

Appellee does not brief this point.

Sec. 3101, Title 38 U.S.C.A., provides in part that payments of benefits due or to become due under any law administered by the Veteran's Administration "shall be exempt from the claims of creditors * * * and shall not be liable to * * * seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

It has been held that the exemption in this section is restricted to processes brought by creditors. Voelkel v. Tohulka, 236 Ind. 588, 141 N.E.2d 344, 70 A.L.R.2d 1349, certiorari denied 355 U.S. 891, 78 S.Ct. 263, 2 L.Ed.2d 189.

If this construction is correct then the exemptions created in behalf of the veteran are inapplicable here because support payments of the nature involved are not debts enforceable by garnishment, execution or other process, but are enforceable by civil contempt only. Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119.[2]

We are of the opinion that this point is not well taken.

█ Appellants' point twenty four is directed to the action of the Court in denying them a reasonable time within which to make and file objections and exceptions to the charge of the Court. Appellants state that they were given only fifteen minutes for this purpose.

Conceding that the time may have been inadequate, we are not advised in what manner appellants were harmed by this limitation of time and we perceive none. The point is overruled.

We reform the judgment of the Trial Court as follows:

The word "only" is deleted from the fifth line of that portion of the judgment copied above relating to the "Bee Caves" place.

The following provision is inserted in the judgment just before its last paragraph:

"This judgment is without prejudice to the rights, and the assertion of such rights, if any, held by defendant N. J. Dillard under a $3000.00 note secured

---

2. See Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 400, 94 L.Ed. 424, where the Court in construing former but similar Sec. 454a, 38 U.S.C.A., said:

"We recognize that some courts have ruled that this and similar exemptions relating to pensions and veterans' relief do not apply when alimony or the support of wife or children is in issue."

After citing cases the Court stated:

"Our view of those cases, whatever it may be, is irrelevant here."

by a lien on the Bee Caves property herein described, such note and lien being the same note and lien described in Cause No. 115,504, pending in the 126th District Court of Travis County."

Since we have materially reformed the judgment, we assess the costs of appeal as follows: 4/5ths against appellants, 1/5th against appellee.

As reformed, the judgment of the Trial Court is affirmed.

Reformed and, as reformed, affirmed.

### On Appellants' Motion for Rehearing

In disposing of appellant T. O. Dillard's assignments pertaining to the adjudication that a one half interest in the property at 2102 Winsted Lane was community property we made the statement that "There is no evidence that disposition or partition of this property was made in that suit (first divorce) or otherwise until October 17, 1953, when Mrs. Charlotte Dillard, the first wife, made conveyance by deed of her interest in this property to T. O. Dillard, who at that time was married to appellee."

Appellant T. O. Dillard now challenges this statement and for the first time calls our attention to the following testimony taken from a more than 1000 page statement of facts.

Mr. Pearce Johnson, attorney for Mrs. Charlotte Dillard, the first wife, in her suit for divorce against T. O. Dillard, testified:

"Q. In that case was there a property distribution or property settlement? A. Yes, sir.

\* \* \* \* \* \*

"Mr. and Mrs. Dillard discussed the division of that property, and insofar as I recall the transaction, Mr. Dillard was to take the garage apartment. (2102) \* \* \*."

Mr. Johnson testified that he did not participate in drawing the settlement papers regarding the real estate and he did not know whether the oral agreement about which he had testified was carried into effect.

Mr. Sidney Purser, an attorney, who represented Mrs. Charlotte Dillard in settling her community property rights with T. O. Dillard after their divorce testified regarding this property:

"It was divided by oral agreement, which manifested itself in the two deeds that I drew, I presume.

\* \* \* \* \* \*

"Well, the duplex (2102), as I recall, was given to Mr. Dillard."

Our attention is also directed by appellants to the following testimony of T. O. Dillard:

"No, sir. I didn't pay the first Mrs. Dillard a dime for 2102 Winsted Lane."

As to this Mr. Purser testified:

"Q. In connection with that statement in the deed, that refers to other valuable consideration, Mr. Purser, consideration, that the deed to the garage apartment—do you recall what other consideration there might have been at that time? A. You mean as to the garage apartment?

"Q. Yes, sir.

\* \* \* \* \* \*

"Q. Were there any other debts that were outstanding of the community? A. Yes, sir; as I recall, at the time there was an indebtedness—I don't remember the amount—somewhere around eighteen hundred, nineteen hundred, two thousand dollars, somewhere in that neighborhood.

"Q. Was Mrs. Charlotte—was she to pay it or was Mr. Dillard to pay it after this settlement? A. Well, it was—you mean at the settlement?

"Q. Yes. A. Mr. Dillard was to pay it; it was to his father, as I recall.

"Q. Yes, sir. A. And Mrs. Dillard acknowledged to me that the debt was due.

"Q. Now, I want to ask you the question in regard to the garage apartment. Was there—and in regard to the other consideration recited in the deed, that there was paid an additional ten dollars, did this $1800 obligation have anything to do with it? A. You mean with the consideration?

"Q. For the garage apartment. A. Yes, sir; Mr. Dillard assumed the indebtedness on the property.

"Q. And it was pursuant to that, that this deed was issued; is that right? A. Yes, sir, as I recall it."

Mr. T. O. Dillard also testified that "I was given the deeds sometime after we were married. My first wife and I settled that thing out, and I got the deeds, I think, sometime in 1953" and that "probably" this property was acquired from his first wife with community funds of the second marriage.

It is our opinion that the status of this property has not been developed to the point that a fact finder could fairly determine that such property is the separate property of Mr. T. O. Dillard or community property of appellee and himself.

If the partition or settlement incident to the first marriage was complete before T. O. Dillard was remarried, the obligation to pay $1,800 would necessarily be the separate obligation of Mr. Dillard, and the property would be his separate property. If, however, such obligation was created during the second marriage, then it would be a community or separate obligation as the facts, measured by the rule stated in Goodloe v. Williams, cited in our original opinion, show it to be, and the status of the property to that extent at least would be fixed accordingly.

We reverse the judgment as to this property and remand the cause for retrial of all issues which are or may be properly presented concerning it. In all other respects our former judgment is left unaffected.

Appellants' Motion for Rehearing is granted in part and in part overruled.

Motion granted in part and in part overruled.