IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-513-CV





JOYCE N. AMES,



 APPELLANT


vs.





JIM C. AMES,



 APPELLEE


 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 51ST JUDICIAL DISTRICT



NO. FA90-1288-A, HONORABLE DICK ALCALA, JUDGE



 





PER CURIAM

 This is an appeal from a final decree of divorce. We will affirm the trial court's
judgment.

 Appellee Jim C. Ames (Jim) and appellant Joyce N. Ames (Joyce) cross-petitioned
for divorce seeking dissolution of their forty-one year marriage and division of their marital estate. 
Trial was to the court. The only contested issues related to characterization and division of the
parties' property, and reimbursement of the community estate. Both parties filed inventories with
the court. Only Joyce and Jim testified. After both sides closed, the trial court granted the
divorce and took the matter of the property division under advisement. On August 9, 1991, the
trial court rendered the final decree of divorce setting forth its orders for division of the parties'
marital estate. Joyce appeals from the trial court's final decree.


DISCUSSION


Standard of Review

 In her first point of error, Joyce asserts that the trial court erred in awarding her
separate property to Jim. In her second point of error, Joyce asserts that the trial court erred in
mischaracterizing this separate property as community property. The trial court did not make any
findings of fact or conclusions of law. (1) Where findings of fact and conclusions of law are not
properly requested and none are filed, an appellate court will presume that the trial court made
all the necessary findings to support its judgment and will affirm the trial court's judgment if it
can be upheld on any legal theory that finds support in the evidence. Lassiter v. Bliss, 559
S.W.2d 353, 358 (Tex. 1977), overruled on other grounds, Cherne Indus. Inc. v. Magallones,
763 S.W.2d 768, 770 (Tex. 1989).

 In a decree of divorce, the court shall order a division of the parties' estate in a
manner the court deems just and right having due regard for each party's rights. Tex. Fam. Code
Ann. § 3.63 (West Supp. 1992). The phrase "estate of the parties" refers only to community
property. In pronouncing a decree of divorce, a court does not have authority to compel either
party to divest title to separate real or personal property. See Cameron v. Cameron, 641 S.W.2d
210, 219-20 (Tex. 1982). Because the trial court is without authority to divest Joyce of her
separate property, we presume that the trial court found that the property Joyce complains of is
community property. Accordingly, we construe Joyce's first and second points of error as
attacking the sufficiency of the evidence to support the trial court's implied finding that the
property is community property. See O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 114 (Tex.
1976) (rule of liberal construction applies to points in appellant's brief; merits of error will be
passed on in light of the statement and arguments). A trial court's implied findings may be
challenged by insufficient-evidence points the same as jury findings and a trial court's findings
of fact. Burnett v. Motyka, 610 S.W.2d 735, 736 (Tex. 1980). 

 When reviewing the factual sufficiency of the evidence, we must consider and
weigh all the evidence and should set aside the judgment only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709
S.W.2d 175, 176 (1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool
v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986); see generally William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515 (1991). 

Characterization of Property Joyce Asserts She Inherited

 Joyce claims that she inherited three tracts of land from her parents (Newman
tracts) which she subsequently sold. She argues that she traced the proceeds from the sale of the
Newman tracts to various assets, that these assets are her separate property, and that they should
have been characterized as such. The threshold issue is whether the Newman tracts were Joyce's
separate property. 

 Separate property includes property a spouse acquires "during marriage by gift,
devise or descent." Tex. Fam. Code Ann. § 5.01(a)(2) (1975). Community property is "the
property, other than separate property, acquired by either spouse during marriage." Tex. Fam.
Code Ann. § 5.01(b) (West 1975). Property either spouse possesses during or on dissolution of
the marriage is presumed to be community property. The degree of proof necessary to establish
that property is separate property is clear and convincing evidence. Tex. Fam. Code Ann. § 5.02
(West Supp. 1992). 

 Joyce introduced into evidence the warranty deed for the Newman tracts. The deed
reflects that Joyce did not inherit her entire interest in the Newman tracts. Rather, she purchased
an undivided five-sixths (5/6) interest in the tracts on May 24, 1982, during her marriage to Jim. 
The deed recites that Joyce paid $10.00 and other good and valuable consideration in cash out of
her separate estate. (2) Additionally, Joyce borrowed $7,000.00 from the First National Bank of
Granbury, Texas to pay the balance of the purchase price. Joyce testified that she borrowed the
amount in her name alone. The deed recites that the bank paid the money 



at the specific instance and at the request of Grantee herein, Joyce Newman Ames,
with the understanding and agreement that the same shall be secured by a Vendor's
lien herein retained, evidenced by One Certain Promissory Note of even date
herewith in the principal sum of Seven Thousand Dollars ($7,000.00), executed by
the Joyce Newman Ames, payable to the order of the First National Bank of /
Granbury, Texas, said note bearing interest and being due and payable as therein
provided, and said note being further secured by a Deed of Trust Lien (3) from
Grantee herein, Joyce Newman Ames, wherein Jim Pace is named Trustee, for the
benefit of the said The First National Bank of/ Granbury, Texas; and the said The
First National Bank of Granbury, Texas / is hereby subrogated to all the rights and claims
herein retained.



 The deed recites that the grantors conveyed the property to Joyce as her separate
property. Jim's name is not on the deed. Nevertheless, property purchased during marriage by
either spouse on credit or with borrowed money is community property unless an agreement exists
that the vendor will look only to the separate estate of the vendee for satisfaction of the funds
borrowed or credit extended. Dillard v. Dillard, 341 S.W.2d 668, 671 (Tex. Civ. App.--Austin
1960, writ ref'd n.r.e.); see Wallace v. Wallace, 623 S.W.2d 723, 729 (Tex. Civ. App.--Houston
[1st Dist.] 1981, writ dism'd) (wife failed to rebut community-property presumption where recitals
in deed indicating property is to be held as her separate property were contradicted by language
in deed relating to consideration). Joyce had the burden to show that the bank agreed to look only
to her separate property for repayment of the funds she borrowed from the bank; such an
agreement is essential to a finding that the tracts are her separate property. See Dillard, 341
S.W.2d at 671. There is no evidence of such an agreement. Accordingly, the trial court had
evidence from which it could find that the five-sixths undivided interest in the Newman tracts
conveyed to Joyce by the warranty deed is community property despite the recitation in the deed. 
At best, the record evidence supports an implied finding that Joyce inherited an undivided one-sixth interest in the Newman tracts and commingled separate and community funds to purchase
a five-sixths interest. Thus, she failed to carry her burden to prove that the tracts were her
separate property.



Assets Traced to Proceeds From Sale of Newman Tract-I

 In 1986, Joyce sold one of the Newman tracts (Tract-I) to Louis and Elizabeth
Sabo. The Sabos made a cash down payment of $14,000.00 and executed a promissory note in
the original principal amount of $47,500.00 payable to Joyce and Jim (Sabo note). Joyce testified
that she invested the cash down payment, placing $10,000.00 in a certificate of deposit (CD) and
the remaining $4,000.00 in an individual retirement account (IRA) at the Concho Educators
Federal Credit Union. Joyce further testified that the $4000.00 grew to the sum shown on her
inventory and that the CD had grown over the years to be about $15,000.00. The accounts are
in Joyce's name only. Joyce complains that the trial court erroneously characterized the CD and
IRA as community property. 

 In its decree, the trial court confirmed the Sabo note as Joyce's separate-property. (4) 
Joyce's assertion that the assets purchased with the remaining Tract-I proceeds are also her
separate property is based on her underlying claim that she inherited the Newman tracts as her
separate property. We have already determined that there is evidence to support the trial court's
failure to find as to five-sixths of the Newman tracts. There is no evidence that Joyce acquired
greater than a one-sixth separate-property interest in the Tract-I proceeds. Accordingly, there is
sufficient evidence to support the trial court's implied finding that the Tract-I proceeds used to
fund the CD and IRA were community property.



Assets Traced to Proceeds From Sale of Newman Tract-III (5)

 Joyce next complains that the trial court erroneously characterized as community
property the following assets: the Myers and Wadsworth notes, and the down payment on her
residence located at 2602 West Harris. Joyce claims that she traced these assets to proceeds from
the sale of another Newman tract, Tract-III. 

 1. Background. In 1983, Joyce and Jim borrowed $50,000.00 from the First
National Bank of Granbury to build a baitstand on Tract-III. As security for the loan, Joyce and
Jim executed a real estate lien note in the amount of $50,000.00, secured by a deed of trust
covering Tract-III. Joyce testified that the money was used to pay for construction of the
baitstand. There is no evidence regarding the enhancement in value to Tract-III resulting from
the expenditures on the baitstand.

 In July 1986, Joyce and Jim sold Tract III for $125,000.00. The proceeds from
the Tract-III sale consisted of separate (Joyce's original undivided 1/6 interest in the Tract-III) and
community (the remaining interest in tract-III) property interests. Joyce and Jim used part of these
commingled proceeds to pay off the $50,000.00 baitstand note and deposited the rest ($75,601.00)
in a Concho Educators Credit Union account in both their names. Joyce admits that she is unable
to trace the entire remainder of the $75,601.00 deposited in the Concho Educators account. 
However, she did trace Concho Educator funds to the disputed assets as follows:



1. In July 1986, Joyce and Jim transferred $20,000.00 from the Concho educators
account into a C.D. at the Farmer's and Merchant's Bank in Ballinger (Ballinger
C.D.); In 1989, Joyce took $7000.00 from the Ballinger C.D. and borrowed
another $14,000.00 to purchase the 2602 West Harris residence; Jim took $3000
cash from the Ballinger C.D.; a $10,000.00 C.D. remained at the Ballinger bank;


2. In September 1986, Joyce used Concho Educators account funds to buy a house
located at 3420 Lake Garden Drive; she sold the house to her daughter and son-in-law in exchange for a $23,787.36 note (Myers note) and deed of trust; the note is
payable to her and Jim; the note's current balance is approximately $21,000.00;


3. In 1987, Joyce used Concho Educators account funds to purchase her mother's
house and three lots for $5100.00, and used another $4000.00 to repair the
property; Joyce sold one and one-half lots (with house) to the Wadsworths in
exchange for a $9700.00 note (Wadsworth note) and deed of trust; balance on the 
note is now approximately $8700.00; Joyce kept the remaining one and one-half
lots;



 2. Characterization. In order to overcome the presumption that property possessed
by either spouse during or on dissolution of marriage is community property, the party asserting
separate ownership must clearly trace the original separate property into the particular assets on
hand during the marriage. Cockerham v. Cockerham, 527 S.W.2d 162, 167 (Tex. 1975). The
Tract-III proceeds deposited in the Concho Educators account consisted of commingled funds. 
Joyce did not segregate and identify the portion of the Tract-III proceeds derived from her original
undivided one-sixth separate-property interest in the tract, nor did she segregate her community
property earnings also deposited in the same account. From the evidence, the trial court could
determine that the money in the Concho Educators account was community property. Walter -Smith Co. v. Coker, 176 S.W.2d 1002, 1007 (Tex. Civ. App.--Eastland 1943, writ ref'd w. o. m.)
(bank accounts consisting of separate and community funds commingled in such a manner that
neither can be distinguished from the other must be regarded as a community account). 
Furthermore, Joyce used Concho Educator funds for the West Harris down payment, and to
purchase and repair the property for which the Myers and Wadsworth notes were given. Joyce
did not resegregate and identify her separate property interest in these assets. When separate and
community property have been so commingled as to defy resegregation and identification, the
burden to trace and clearly identify the separate property is not discharged and the presumption
that the entire mass is community controls its disposition. Tarver, 394 S.W.2d 780, 783 (Tex.
1965). Accordingly, there is sufficient evidence to support the trial court's implied findings that
the West Harris down payment, Myers note, and Wadsworth note are community assets. 
Appellant's first two points of error are overruled.



Disproportionate Property Division

 In her third point of error, Joyce asserts that the trial court's division of the
community estate is so manifestly unfair and unjust as to constitute an abuse of discretion. In light
of our disposition of Joyce's first two points of error, we need not address the arguments under
this point that are predicated on the assumption that the trial court mischaracterized her separate
property. Joyce asserts that the trial court disproportionately divided the community estate in
Jim's favor, awarding him approximately fifty-four percent (54%) of the community. Joyce
argues that there is no justification for the disproportionate division. 

 As the reviewing court, we presume that the trial court properly exercised its
discretion and will not reverse unless there is a clear abuse of discretion. Bell v. Bell, 513
S.W.2d 20, 22 (Tex. 1974). The trial court's property division does not have to be equal. Id. 
However, there must be some reasonable basis for decreeing an unequal division of the property. 
Cooper v. Cooper, 513 S.W.2d 229, 233 (Tex. Civ. App.--Houston [1st Dist.] 1974, no writ). 
Factors to be considered in determining a fair and just division include the disparity of the earning
power of the parties, as well as their business opportunities, capacities and abilities; the physical
condition of the parties; probable future need for support; educational background; fault in
breaking up the marriage; and the benefits the innocent spouse would have received from a
continuation of the marriage. The trial court must evaluate these and other matters in determining
a just and fair division of the property. Id. at 233-34.

 Joyce testified that Jim has not worked in the last five to seven years, and that he
had no income in 1990. Joyce testified that she works caring for elderly people, but did not state
her income. Jim testified that his reported income for 1990 was approximately eight hundred
dollars, derived from interest earned on a bank account. Jim further testified that before Joyce
acquired the Newman Tracts, he owned a wholesale manufacturing company for about twelve
years. The business required him to drive around the state, which he did until he suffered a heart
attack. After his heart attack, Jim had to get off the road and sold the business. Jim also testified
that he is blind in his right eye, that his left eye is deteriorating fast and that "I got about two
more years to have my sight." Jim testified that he plans to earn income from his computer
genealogy business. However, he had not derived any income from the business in 1990 or at the
time of trial. Neither party alleged any fault as a basis for seeking divorce. On this record, we
cannot say that there is no reasonable basis for the trial court's disproportionate property division
or that the property division is manifestly unfair and unjust so as to constitute an abuse of
discretion. Appellant's third point of error is overruled. 


 The trial court's judgment is affirmed.


[Before Justices Powers, Aboussie and B. A. Smith; Justice Aboussie Not Participating]

Affirmed

Filed: December 9, 1992

[Do Not Publish]
1. [1] None were properly requested. Joyce filed two untimely requests for findings of fact and
conclusions of law. She filed her first request for findings of fact and conclusions of law on
August 30, 1991, twenty-one days after the trial court signed its judgment. She filed her second
request for findings of fact and conclusions of law on October 23, 1991, fifty-four days after she
filed her initial request. See Tex. R. Civ. P. 296, 297.
2.   The record does not show the amount of the cash consideration paid from Joyce's separate
estate.
3.   The note and deed of trust lien are not a part of the record.
4. [4]  Neither party complains that the trial court erred in confirming the Sabo note as Joyce's
separate property. Joyce only disputes that the trial court erred by not characterizing the CD and
IRA as her separate property. Accordingly, we offer no opinion on the trial court's
characterization of the Sabo note as Joyce's separate property.
5. [5] Neither party complains of the trial court's disposition of assets derived from the sale of the
only other Newman tract, Tract-II.