Emma GOODLOE et al., Appellants,

v.

Modest Spikes WILLIAMS et al., Appellees.

No. 6946.

Court of Civil Appeals of Texas.

Texarkana.

April 18, 1957.

Rehearing Denied May 9, 1957.

Connor W. Patman, Texarkana, Tex., George F. Edwardes, Texarkana, Ark., for appellants.

Harkness & Friedman, Herbert Line, Texarkana, for appellees.

CHADICK, Chief Justice.

This is a trespass to try title and partition suit involving 20 acres of land in Bowie County. The trial court judgment is affirmed.

Andrew Williams married Irene Mulgrove in 1913. For sometime prior to her marriage Irene had operated a prosperous boarding house and by all accounts was rather affluent. She continued to prosper after marriage and on August 10, 1916, T. J. May and wife, Lula, by warranty deed conveyed to Irene Williams a 20-acre tract in the H. S. Janes Survey about three miles west of Texarkana. The deed recites a consideration of $500 cash paid and two vendor's lien notes of $500 each due one and two years respectively from the date of the deed. These notes were jointly signed by Andrew and Irene Williams and the indebtedness was paid during the time of their marriage.

Irene Williams had two children of a prior marriage, Emma Goodloe and Edna Price, the appellants. There were no children born of the marriage of Andrew and Irene Williams. Irene died in 1918 and Andrew thereafter married Modest Spikes.

Before Andrew died in 1950, several children were born to the union, and Modest Spikes Williams and her children are the appellees here.

Appellants filed a trespass to try title suit claiming title to the entire 20-acre tract on the theory that it was the separate property of their deceased mother, Irene Williams. Defendants answered by a plea of not guilty and a cross-action for a partition on the theory that the tract was the community property of both Andrew and Irene Williams.

██ A jury trial ensued and the court submitted one issue. This single issue inquired if the property was community. The jury answered that it was not. On motion the court rendered judgment for the appellees notwithstanding such jury verdict. Appellants base their appeal on two points: the first, that the court erred in granting appellees' motion for judgment non obstante veredicto; and second, because the court erred in failing to render judgment for the appellants upon the verdict of the jury, there being substantial evidence to support it. In Burt v. Lochausen, 151 Tex. 287, 249 S.W.2d 194, it is said:

"To sustain action of trial court in granting judgment non obstante veredicto, it must be determined that there was no evidence having probative force upon which jury could have made the findings relied upon."

The evidence will be reviewed in conformity with that rule. The facts have been related concerning the conveyance. Because of their interest, the appellants' brief may be relied on to state the facts in accordance with the Burt v. Lochausen rule and since they have stated the facts with an economy of words, their brief is here quoted:

"The Statement of Facts set forth in numerous places evidence to show the belief between the parties, Irene and Andrew Williams, that such prop-

erty was her separate property. It was brought out by the attorneys for the appellees that Andrew stated on a number of occasions 'that is your mother's property' and he (Andrew) acknowledged that to us. Again, attorneys for the Appellees brought out from the witness, Emma Goodloe, that Irene Williams said she had paid the money out of her separate funds. It was shown by Emma Goodloe that her mother, Irene Williams, had separate funds which she kept in a separate box from any community funds which she might have accrued while married to Andrew. And Emma Goodloe brought out the statement of Andrew Williams as follows: 'I don't want this property. This is your mother's property, and you and Edna must help me keep up the taxes. I promised her that I would look after the property for you, and you must help me keep up the expenses of the taxes.'

"A totally disinterested witness to the whole transaction was Will Smith, a Negro, who knew both Irene and Andrew well during their lifetime and who helped to take care of the property for the appellants. Will Smith quoted Andrew as stating, in response to a request to buy the property, that he could not sell it, that it belonged to his daughters. He said his wife bought that for his daughters. It was brought out by Will Smith that at several different times Andrew Williams stated that the property belonged to Emma Goodloe and Edna Price and that their mother had bought it.

"At numerous other points in the Statement of Facts the witnesses clearly bring forth the fact that this property was at all times considered to be the property of Irene Williams and on her death would be the property of the appellants. That Andrew Williams acknowledged such ownership, and on numerous occasions stated that it was

their property and that he was caring for it for them.

"Such property was purchased in her name and part cash was paid and part was paid at a later date. Never, at any time during the life of Irene Williams, did Andrew Williams dispute title being in her and after her death, as heretofore set forth, he acknowledged on numerous occasions that the property was the property of the appellants herein."

■ The question for determination on this appeal is: Are the facts related evidence of probative value that the land was the separate property of Irene Williams? In the evidence quoted there is a total absence of proof that T. J. May and wife agreed with Irene Williams at the time of the purchase transaction that the land was to be Irene's separate property and that the deferred payments therefor represented by two $500 vendor's lien notes was to be paid out of her separate funds.

The case of Gleich v. Bongio, Tex.Com. App., 128 Tex. 606, 99 S.W.2d 881, 884, by Judge (now Chief Justice) Hickman of the Commission of Appeals, in an opinion adopted by the Supreme Court says:

"* * * Does the intention of the husband and wife at the time property is purchased upon a community obligation determine whether it is to become community property or the separate property of one of the spouses? It would appear that probably there is not complete harmony in the decisions on that question. Recent opinions of this court, however, have pointed out the true nature of agreements having that effect.

"In Brokaw v. Collett, Tex.Com. App., 1 S.W.2d 1090, 1091, it was held:

" 'It does not lie in the power of the husband and wife by contract between themselves, made in advance, to set aside the Constitution of this state, as applied to the wife's separate property rights.'

"In Foster v. Christensen, Tex.Com. App., 67 S.W.2d 246, 249, Judge Smedley clearly expressed the true rule in this language:

" 'The land, of course, presumptively becomes the community property of Mr. and Mrs. Newgent when it was conveyed to them jointly with no recital of her separate ownership; but her ownership of the land as her separate property would have been established by proof of the allegations in the answer that the cash payment was made out of her separate funds and that it was agreed at the time *by the parties to the deed* that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds.' (Italics ours).

"In the case of Solether v. Trinity Fire Insurance Co., 124 Tex. 363, 78 S.W.2d 180, Judge (now Justice) Critz quoted with approval from Judge Smedley's opinion and reannounced the holding made therein. The mere intention of the husband and wife cannot convert property purchased with an obligation binding upon the community into the separate estate of either spouse. *To accomplish that purpose the vendor must have agreed with vendee to look only to his or her separate estate for the satisfaction of the deferred payments.*" (Emphasis added.)

Judge Hickman in this opinion emphasized the words that are emphasized in this quotation.

The two vendor lien notes were in form joint promises to pay their face amount, signed by both Andrew and Irene Williams, and secured by a lien on the land. As such they were an obligation of the community estate. Article 4620, Vernon's Ann.Civ. St.

Lacking this indispensable proof that the vendors, T. J. and Lula May, agreed with the vendee, Irene Williams, that the land should be her separate property and that the balance of the purchase money should be paid out of her separate funds, there is no evidence that shows the 20 acres was Irene Williams' separate property.

The trial court granting the motion for judgment notwithstanding the verdict was proper, and conversely, refusing to enter a judgment on the verdict of the jury was required. Both of appellants' points are respectfully overruled, and the judgment of the trial court is affirmed.