**Margo TEAS, Appellant,**

v.

**REPUBLIC NATIONAL BANK OF DALLAS, Paul C. Teas, Jr., and Paul C. Teas, Sr., individually and as trustee, Appellees.**

**No. 17506.**

Court of Civil Appeals of Texas, Dallas.

Oct. 9, 1970.

Rehearing Denied Nov. 20, 1970.

Charles R. Jones, Scott, Hulse, Marshall & Feuille, El Paso, for appellant.

B. Thomas McElroy, White, McElroy & White, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

This action was instituted by Margo Teas against her husband, Paul C. Teas, Jr., Paul C. Teas, Sr., both individually and in his capacity as trustee, and the Republic National Bank of Dallas, in which she sought a judgment decreeing cancellation and rescission of certain conveyances, assignments and transfers, and also for actual and exemplary damages. She alleged that the four pieces of property made the subject matter of the litigation had been acquired during their marriage and that her husband, Paul C. Teas, Jr., had made the transfers and conveyances to the Republic National Bank of Dallas, which in turn, had transferred same to Paul C. Teas, Sr., individually and as trustee, all as a part and parcel of a scheme and device to deprive her of her interest in said property. As the basis for equitable relief sought to annul the assignments and conveyances she charged statutory fraud, common law fraud and conspiracy, unnecessary and unreasonable collateralization, inadequacy of con-

sideration and a wrongful agreement to "chill" the bids at foreclosure sale. For convenience, the four pieces of property are referred to as (1) Hunt County property, (2) Garza County property, (3) Capitan Ranch note and (4) Twentieth Century Fox contract.

Teas, Jr., filed his answer in which he denied any wrongful conduct or fraud in the hypothecation of the various properties by him to the Republic National Bank of Dallas. He contended that such mortgages and transfers were in the usual course of business to secure the payment of community debts owed to the bank. By cross-action he sought a decree of divorce from his wife. This cross-action was severed from the main suit and, as far as this record shows, is still pending. The other defendants answered with a denial of any fraud or wrongdoing in connection with the transaction.

The case was tried in the district court before a jury and the following relevant facts were presented: Paul C. Teas, Jr. and Margo Teas were married March 17, 1951 and such marital status had not been terminated. Two children, both sons, were born of that marriage. On June 12, 1951 Paul C. Teas, Sr. conveyed, by warranty deed, an undivided one-half interest in a tract of land in Culberson County, Texas known as the Capitan Ranch to each of his children, Paul, Jr. and Laura Sue Hall, a widow. It was expressly recited that the property was conveyed to Paul, Jr. as his separate property and that the note given as part consideration for the transfer was to be paid by Paul, Jr. out of his separate monies. Teas, Jr. and Margo moved onto the ranch shortly thereafter and lived there for seven or eight years. Teas, Jr. commenced borrowing money and from time to time invested considerable sums of borrowed money in improvements for ranching, irrigation and cultivation on the ranch. The evidence is inconclusive as to the exact sums so invested. In November, 1960 Teas, Jr. and his sister, the owner of the other half of the ranch, sold and conveyed

the Capitan Ranch to Capitan Company receiving some cash and a note in the sum of $380,000. At the time the Capitan Ranch was sold Teas, Jr. had borrowed as much as $161,934 from the Republic Bank. After leaving the ranch Teas, Jr. went into the oil business and acquired an interest in the Hunt County oil leases, the Garza County leases and the Twentieth Century Fox contract which involved property in California. All of these properties were acquired in the name of Teas, Jr. and were paid for with money borrowed from time to time from the Republic Bank.

Meanwhile, the marriage relationship had become endangered by virtue of facts not deemed necessary to be related here. The couple continued to be beset with marital troubles so that in July, 1967 Margo filed a divorce action against Paul, Jr. in El Paso. This case was subsequently dismissed by her. At the time of trial Margo and her two sons were living in El Paso.

Teas, Jr., throughout his adult life, had always been beset with financial troubles. His father, Teas, Sr., was thoroughly familiar with this situation and had assisted his son innumerable times to borrow money. Teas, Sr. was a substantial stockholder and a good customer of the Republic Bank. On each occasion when the bank loaned money to Teas, Jr., Teas, Sr., had endorsed the note to the bank as a guarantor. The bank's officers testified that Teas, Sr.'s endorsement on the various notes representing loans to Teas, Jr. was the real consideration for the transaction. The four properties in question were, at different times, pledged to the Republic National Bank to secure pre-existing debts of Teas, Jr. In September, 1960 Teas, Jr. gave a deed of trust covering the Hunt County leases to the bank to secure his pre-existing indebtedness. On February 28, 1963, at a time when Teas, Jr. was in serious financial difficulties, the Twentieth Century Fox contract and Teas, Jr.'s interest in the Capitan Ranch note were pledged to the bank as security for his then existing indebtedness which amounted to $201,618.-

47. In 1964 Teas, Jr. placed the Garza County leases with the bank to secure his pre-existing debt which was at that time $180,501.62. The last renewal of the Teas, Jr. bank indebtedness was December 30, 1966 for the principal amount of $153,974.76. At the time of the transactions concerning these properties the bank knew that Teas, Jr. was "broke" and it was believed that he owed about $250,000 to other creditors.

On July 1, 1967 the bank transferred its interest in the Twentieth Century Fox property to Teas, Sr. because the property, which was located in the State of California, was involved in litigation in that state and the bank did not wish to become involved in such litigation or to expend money to defend the interest. On December 29, 1967 following discussion with Teas, Sr., the bank elected not to renew or extend the debt of Teas, Jr. and decided to foreclose on the security. Teas, Sr. advised the bank that inasmuch as he was liable as an endorser he preferred to have the bank proceed to realize its debt from the collateral. On April 2, 1968, after due notice, foreclosure sales were had on the Hunt County and the Garza County properties, the same being purchased at the sale by Republic Bank for a consideration of $4,000 for the Garza leases and $3,500 for the Hunt County property. On June 14, 1968, after notice to Teas, Jr., the bank offered for sale and did sell the interest in the Capitan note to Teas, Sr. On that date Teas, Sr. had requested the bank to compute the total amount of the debt owing by Teas, Jr. and the bank computed the same as being $137,527.37. Teas, Sr. paid the bank this amount which included the purchase of the Hunt and Garza County properties as well as the Capitan Ranch note. Thus the entire indebtedness of Teas, Jr. to the Republic Bank was completely liquidated. Thereafter the various assignments of collateral interest in the four pieces of property originally pledged by Teas, Jr. to the bank and, in turn, transferred to Teas, Sr., were transferred by Teas, Sr., individually, to Teas, Sr., as trustee of a trust established for the benefit of the children of Teas, Jr. and Margo as well as the children of Teas, Jr.'s sister.

The jury rendered the following findings in response to special issues submitted concerning each of the four pieces of property:

## HUNT COUNTY LEASES

That at the time Teas, Jr. delivered to Republic Bank the deed of trust dated August 3, 1960 he did not do so with intent to delay or hinder his creditors in the collection of their debts nor did he do so with intent to deprive Margo Teas of any interest in such property; that Teas, Sr. paid the bank $10.00 for purchase of the properties; that before the foreclosure sale of April 2, 1968 Teas, Sr. and Teas, Jr. entered into a common scheme or plan to deprive Margo of an interest in the Hunt County property; that the officers of the bank had knowledge of such scheme before the sale; that the foreclosure sale of April 2, 1968 was made for the purpose of carrying out such scheme or plan; that as a proximate result of the transaction dated August 3, 1960 and the transaction of April 2, 1968 Margo was deprived of an interest in the Hunt County property; that the deed of trust dated August 3, 1960 was not reasonably required by the bank to secure the debt of Teas, Jr. at the time same was delivered to the bank; that when the deed of trust was delivered to the bank on September 13, 1960 the market value of the property was $36,000; that when the property was bought by the bank at foreclosure sale of April 2, 1968 it had a value of $3,500; and when the property was sold to Teas, Sr. on June 6, 1968 it had a market value of $3,500.

## GARZA COUNTY LEASES

That when Teas, Jr. delivered the deed of trust dated July 30, 1964 relating to the Garza County property to the bank he did so with intent to delay and hinder his creditors; that the officers of the bank had notice of such intent when the deed of

trust was delivered to the bank; that the officers of the bank had notice of such intent at the time the bank bought the Garza County property at the foreclosure sale on April 2, 1968; that Teas, Sr. had notice of such intent when he bought the Garza County property from the bank on June 6, 1968; that when Teas, Jr. signed and delivered the deed of trust to the bank on July 30, 1964 he did so with intent to deprive Margo of an interest in such property; that the officers of the bank did not have notice of such intent at the time such deed of trust was delivered to the bank; that the officers of the bank did have notice of such intent at the time the bank bought the Garza County property at the foreclosure sale on April 2, 1968; that Teas, Sr. had notice of such intent when he bought the property from the bank on June 6, 1968; that Teas, Sr. paid the bank $10.00 for the property; that prior to the foreclosure sale on April 2, 1968 Teas, Sr. and Teas, Jr. entered into a common scheme or plan to deprive Margo of an interest in the property; that the officers of the bank had notice of such scheme or plan before the foreclosure sale; that the foreclosure sale was made for the purpose of carrying out such scheme or plan; that as a proximate result of the transactions of July 30, 1964 and April 2, 1968 Margo was deprived of an interest in the property; that when the deed of trust was given to the bank it was not reasonably required by the bank to secure the debt of Teas, Jr.; that when the deed of trust was delivered to the bank on July 30, 1964 the cash market value of the property was $21,600; that when the property was bought by the bank at the foreclosure sale on April 2, 1968 it had a market value of $4,000; that when the property was sold to Teas, Sr. on June 6, 1968 it had a cash market value of $4,000.

## CAPITAN RANCH NOTE

That when Teas, Jr. signed and delivered to Republic Bank the collateral pledge agreement dated February 28, 1963 relating to his half interest in the Capitan note he did so with intent to delay or hinder his creditors; that the officers of the bank had notice of such intent at the time the collateral pledge agreement was delivered; that Teas, Sr. had notice of such intent when, acting as trustee, he bought the interest of Paul, Jr. in the Capitan note on or about June 14, 1968; that when Teas, Jr. delivered the collateral pledge agreement to the bank on February 28, 1963 he did not do so with intent to deprive Margo Teas of any interest in the property; that before the sale of the half interest in the Capitan note was made about June 14, 1968 Teas, Jr. and Sr. entered into a common scheme or plan to deprive Margo of an interest in the Capitan note; that the officers of the bank had notice of such scheme or plan before the sale; that such sale was made for the purpose of carrying out that scheme or plan; that as a result of the transaction of July 30, 1964 and the transaction of June 14, 1968 Margo was deprived of an interest in the Capitan note; that the collateral pledge agreement was not reasonably required by the bank as security on the debt of Teas, Jr. at the time it was delivered to the bank; that the cash market value of the half interest in the Capitan note when the pledge agreement was delivered on or about February 28, 1963 was $169,668; that when the interest of the Capitan note was sold to Teas, Sr., as trustee, on June 14, 1968 the cash value thereof was $164,472.30.

## TWENTIETH CENTURY FOX CONTRACT

That when Teas, Jr. delivered to Republic Bank the deed of trust dated February 28, 1963 he did so with intent to delay and hinder his creditors; that the officers of the bank had notice of such intent; that Paul, Sr. had notice of such intent when the assignment was made to him; that when Teas, Jr. delivered the deed of trust to Republic Bank on February 28, 1963 he did not do so with intent to deprive Margo Teas of any interest in such contract; that before the assignment to Teas, Sr. Paul, Jr. and Paul Sr. did not enter

into a common scheme or plan to deprive Margo of any interest in such contract; that as a proximate result of the transaction dated February 28, 1963 and the transaction of July 1967 Margo was deprived of an interest in such contract; that the assignment of February 28, 1963 was not reasonably required by the bank to secure the debt of Teas, Jr.; that the cash market value of the interest of the contract covered by the deed of trust dated February 28, 1963 both at the time the deed of trust was delivered and when the assignment was made to Teas, Sr. was the sum of $45,000.

## EXEMPLARY DAMAGES

That Margo Teas should be awarded the sum of $25,000 as exemplary damages against Paul Teas, Jr. and that she should be awarded the sum of $75,000 as exemplary damages against Paul Teas, Sr.

In answer to Special Issue No. 15 the jury found that on or about and shortly before April 2, 1968 Teas, Sr. and an officer of the Republic Bank agreed that the bank would bid in the Hunt County property at $3,500 and the Garza County property at $4,000 at the foreclosure sale and that Teas, Sr. would purchase these same properties from the bank at the price the bank bid them in at such foreclosure sale.

After the receipt of the verdict Margo Teas filed her motion to set aside and disregard certain answers of the jury and also for entry of a judgment on the verdict. This motion was overruled. Teas, Jr. and Teas, Sr., individually and as trustee, filed various motions for judgment *non obstante veredicto* and also for judgment based upon the verdict of the jury. The record does not disclose a notice or hearing on the motion for judgment *non obstante veredicto*. On March 18, 1970 the court rendered the following "Final Judgment" which recites, in part:

"* * * And based on said verdict of the jury, Plaintiff Margo Teas duly filed her Motion for Judgment; and also based on said verdict of the jury the

Defendants Republic National Bank of Dallas, Paul C. Teas, Jr., Paul C. Teas, Sr., individually, and Paul C. Teas, Sr., Trustee, all duly filed their Motions for Judgment; and a hearing was duly had on August 5, 1969, on said pending Motions for Judgment, and it appearing to the Court that the facts and the law of the case are with the Defendants,

IT IS, THEREFORE, ORDERED, ADJUDGED and DECREED that Plaintiff Margo Teas take nothing of and from Defendants Republic National Bank of Dallas, Paul C. Teas, Jr., Paul C. Teas, Sr., individually, and Paul C. Teas, Sr., Trustee, but this judgment is without prejudice to any claim Plaintiff may have to property in Los Angeles County, California."

No motions for new trial were filed by either party. Appellant appeals from the judgment as rendered and assigns twenty-six points of error.

## OPINION

In her first five points of error appellant Margo Teas contends that the trial court erred in refusing to render judgment for her based upon the jury's verdict and in rendering a "take nothing" judgment against her. In these points she argues that in order to render the judgment for appellees the trial court necessarily would have had to disregard certain adverse findings of the jury and there having been no action on appellees' motions for judgment *non obstante veredicto* the trial court was without authority to take such action. We find no merit in these points and overrule same.

■ Rule 300, Vernon's Texas Rules of Civil Procedure, provides that when a special verdict is rendered the judge may do one of three things. He may render judgment upon the verdict, render judgment notwithstanding the verdict or jury findings, or he may set aside the verdict and grant a new trial. Rule 301, T.R.C.P., is express in its mandate that the judgment

of the court shall conform to the pleadings, the nature of the case proved and the verdict. Such rule also provides for the rendition of judgment *non obstante veredicto* if a directed verdict would have been proper and also providing that the court may upon motion, and notice, disregard any special issue finding that has no support in the evidence. Implicit in these rules is the fact that it is only when the issue is material that the judgment must conform to the findings. Massie v. Hutcheson, 270 S.W. 544 (Tex.Com.App.1925). As stated in T. A. Manning & Sons, Inc. v. Ken-Tex. Oil Corp., 418 S.W.2d 324, 326 (Tex.Civ.App., Austin 1967, writ ref'd n. r. e.):

> "It is well settled that the trial court can ignore the answer to immaterial issues and render a judgment and such judgment will not be rendered non obstante veredicto. [Citing authorities]"

■ The fundamental rule that the judgment of the court must conform to the verdict necessarily implies that the court must consider the verdict as a whole. Stalder v. Bowen, 373 S.W.2d 824 (Tex.Civ. App., Dallas 1963, writ ref'd n. r. e.); 33 Tex.Jur.2d, Judgments, § 72, p. 579. The findings of the jury on material issues of fact must, of necessity, be construed and reconciled in the light of the applicable law prior to the rendition of judgment. We have carefully reviewed the entire verdict of the jury, summarized above, and find that the trial court's action in rendering the judgment based upon the findings of the jury to material special issues submitted was correct.

Appellant's fifth point of error contains two separate complaints. First, appellant charges that the court erred in refusing to award judgment setting aside all the conveyances relating to the four properties in question in view of the jury's findings that each of the properties was taken as security by the bank for Teas, Jr.'s debt when not reasonably required by the bank to secure the pre-existing debt at the time they were respectively placed as security. Secondly,

appellant says that the court should have rendered judgment for her because of the jury's finding of an inadequate consideration paid for the four properties.

■ As to the first contention, it is true that the jury found that in each of the four instances the security given by Teas, Jr. to the bank was not reasonably required by the bank to properly secure the pre-existing indebtedness. These findings find support in the record since the bank officers testified that the endorsement of Teas, Sr. was sufficient security to satisfy the bank. However, though the *bank* may have legitimately felt, *from its standpoint,* that the endorsement of Teas, Sr. was sufficient collateral for Teas, Jr.'s indebtedness, such question is not the controlling issue. The charge of unnecessary collateralization of the properties in controversy was presented to the jury by the trial court only from a limited standpoint, that is, from the standpoint of the bank only, and does not take into consideration or comprehend the rights and duties of both Teas, Sr. and Teas, Jr. While it may be true that the bank may not have been concerned to secure additional security in the form of collateral yet such additional collateral was a legitimate concern both to Teas, Jr. and to Teas, Sr. As to Teas, Sr., he had a legal interest to protect himself against liability on his endorsement. The effect of the giving of the additional collateral in the form of deeds of trust and assignments was to secure Teas, Sr. on his endorsement which we find to be entirely legitimate. From the standpoint of Teas, Jr. the giving of the additional security for the indebtedness was nothing more than a legitimate obligation on his part to provide a source of funds to pay the debt in the event of default. As a matter of fact, Teas, Jr. would have the right to convey the property to the bank in partial satisfaction of the indebtedness, regardless of the endorsement of Teas, Sr. By the same token he would have the perfect legal right to convey it as collateral security and in either event the controlling question is not whether the bank felt secure with the

endorsement of Teas, Sr. but whether the value of the property so assigned as collateral was excessive as compared with the amount of the indebtedness. The jury findings, being immaterial and not relevant, may not be held to be an impediment to the entry of the judgment rendered.

■ Neither is there any merit in appellant's argument concerning an inadequate consideration paid by the bank for the collateral received and transferred by it. The jury findings as to the Hunt County and Garza County leases demonstrate the fair market value therof. As to the Capitan note the jury finding of value does not reflect an inadequate consideration. Moreover, as will be hereinafter noted, the Capitan note was, as a matter of law, the separate property of Teas, Jr. As to the Twentieth Century Fox property the bank received nothing and, as will be hereinafter noted and as reflected by the judgment itself, the interest of both Teas, Jr. and his wife Margo in this property has not been lost. Appellant's fifth point is overruled.

In appellant's sixth to twelfth points, inclusive, she earnestly contends that the trial court erred in refusing to render judgment cancelling and rescinding the various conveyances because of the jury's findings of statutory and common law fraud which, she asserts, demonstrate that she was deprived of an interest in all of the properties.

Art. 3996, Vernon's Ann.Civ.St. of Texas, as far as material, provided:

"Every gift, conveyance, assignment, or transfer of, or charge upon, any estate real or personal, * * * given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are, or may be, lawfully entitled to, shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This article shall not affect the title of a purchaser, for valuable consideration, unless it appear that he had notice of the fraud-

ulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

This act was repealed in 1967 at which time the Uniform Texas Commercial and Business Code, V.T.C.A., was enacted which included Section 24.02 which was in substantially the same wording as in the statute quoted above. Section 24.03 of the Business and Commerce Code, effective 1967, provides that a transfer by a debtor is void with respect to an existing creditor of the debtor if the transfer is not made for a fair consideration unless, in addition to the property transferred, the debtor has at the time of transfer enough property in this state subject to execution to pay all of his existing debts.

While we entertain serious doubt that, under the prevailing authorities, the wife, such as appellant in this case, occupies a position of "creditor" as provided in the applicable statutes, we do believe that there is no question but that she does occupy the status of an "other interested person" as therein enumerated. The question to be determined therefore is whether the findings of the jury amount to an intent to defraud Margo, and, if so, whether the various transfers are void even though there was payment of full or adequate value for the properties. Pursuant to Section 24.02, as distinguished from Section 24.03, the payment of adequate consideration may not be a controlling factor in determining the issue if the conveyance is made with intent to defraud, and the transferee has notice of such intent. Appellant has cited us to no case, and we have found none, where a conveyance was made for full market value or a consideration not deemed inadequate, and then set aside upon the sole grounds of fraudulent intent.

■ It is, of course, conceivable that where a husband intends to dispose of the proceeds of the sale of community property fraudulently or capriciously to the detriment of his wife, a purchaser of such property who knows of such intent may be held

responsible for the property, even though he has paid full value for it. However, where, as in the case under consideration, the proceeds of the conveyance, found to represent the market value thereof or a fair consideration, have been utilized to extinguish a community debt, and therefore in effect preserving the community estate, the wife has not, in fact, been deprived of her interest therein. It is without dispute that the effect of the transactions in controversy is to reduce the community debt by the full value of the property so that any intent to defraud the wife of her interest in such property would become immaterial.

■ We believe that, as related to the instant case, the key words in the two statutes referred to above, and relied upon by appellant, are those which refer to property of an interested person "or that to which he is, or may become, entitled." What property rights was the wife in this instance entitled to? Her husband, Teas, Jr., clothed by law to act as the manager for the community estate, did that which the law permitted him to do. Kemp v. Metropolitan Life Ins. Co., 205 F.2d 857, 864 (5th Cir. 1953). Having incurred a valid community indebtedness he proceeded to protect the bank and Teas, Sr., the endorser, by placing both community and a portion of his separate property with the bank as collateral. Such act on his part was perfectly legal. Moreover, even a motive, though regarded as bad, or improper, does not render it illegal. "If an act be lawful, * * * an improper motive does not render it unlawful. * * * 'Malicious motives make a bad case worse, but it cannot make that wrong which, in its own essence, is lawful.'" Griffin v. Palatine Ins. Co., 235 S.W. 202 (Tex.Com.App.1921); Bohn Mfg. Co. v. Hollis, 54 Minn. 223, 55 N.W. 1119 (1893); Kingsbery v. Phillips Petroleum Co., 315 S.W.2d 561 (Tex.Civ.App., Austin 1958, writ ref'd n. r. e.). As to intent to deprive the owner of his interest in property by conveyance it may be said that any mortgage of property involves an intent to deprive the owner of his interest in the event the debt is not paid. Appellant would have us to declare potentially void every mortgage given by a husband as collateral for a valid community indebtedness. If the law permits the husband to pledge property and permits the creditor to lawfully foreclose on said property for a valid consideration, then the wife, as a matter of law, has no interest of which she can be deprived. Under the facts as revealed by the record in this case appellee Teas, Jr.'s act in creating the indebtedness, in giving the collateral to secure same, the purchase of the property foreclosed upon default for a valid consideration, all negate the idea of depriving appellant of any interest in the property involved so that the answers of the jury concerning the issues on fraud become immaterial and meaningless.

■ The husband is entitled to deal with the community property as manager thereof and the wife has grounds to complain only if the husband disposes of the property capriciously or by excessive gifts or for inadequate compensation so as to deprive her of the value of her interest. All of the cases cited by appellant in support of these points relating to fraud deal with factual situations where the husband has transferred or attempted to transfer the property to certain persons either by gift or such capricious action as to indicate a clear purpose and intent to defraud the wife. We find no parallel in the facts revealed by this record and for that reason we do not think that the authorities cited by appellant are controlling.

The trial court in this case, viewing the verdict of the jury as a whole, concluded properly that where appellant wife received the full benefit of the transactions there could have resulted only an ineffective intent to defraud and such would not, as a matter of law, constitute the basis for avoiding the conveyances. We think that in this conclusion he was correct. Even assuming that Teas, Jr. and Teas, Sr. intended by the transactions to deprive appellant of her interest in these properties, such intent would not in itself be sufficient

to avoid the conveyances. Teas, Sr., as endorser on the indebtedness, had a legitimate interest in protecting his potential liability by requiring that Teas, Jr. satisfy or protect the indebtedness by providing additional collateral. His direction to the bank to proceed with the foreclosures could not have been wrongful unless the property was sold for an inadequate consideration, and the jury found that this did not occur.

Accordingly, we hold, as a matter of law, that the verdict of the jury, in the light of the undisputed. record, does not afford the basis for setting aside the conveyances in question because of fraud.

■ We find no merit to appellant's contention concerning the answer of the jury to Special Issue No. 15 relating to alleged "chilling" of the bids by the bank on the Hunt County and Garza County properties. The evidence reveals that an officer of the bank did discuss with Teas, Sr. the value of these properties and it was concluded that the amounts would be fair as market values therof. The jury found that the amounts bid by the bank were, in fact, cash market value of the property. As to "chilling" of the bids it could not conceivably have been in Teas, Sr.'s interest to hold down the bidding since the higher the bid the more his liability would have been reduced as an endorser. The finding of the jury to Special Issue No. 15 becomes immaterial.

■ In Point of Error No. 13 appellant complains of the court's refusal to set aside the voluntary conveyance relating to the Twentieth Century Fox property. The record reveals that this property consisted of a net profit interest in certain oil properties in the State of California and was covered by deed of trust dated February 28, 1963 to the bank to secure Teas, Jr.'s indebtedness. There was, in fact, no foreclosure on this property. Instead, on February 1, 1967 the bank assigned all of its interest to this property to Teas, Sr. Such assignment could have no legal effect other than to release the bank's deed of trust on the property since the bank's only interest was security interest which could not be transferred separately and apart from the indebtedness. The bank disclaims any lien on the property. Such assignment could not, as a matter of law, deprive Margo of any interest in the property. Whatever interest she ever had in this contract she still has. Her interest is fully protected by the terms of the judgment itself which expressly provides that the take nothing judgment against her is without prejudice to any claim which she may have to this property. Appellee Teas, Sr., individually and as trustee, both in his motions filed subsequent to verdict and in his brief, concedes that appellant and her husband hold in this contract whatever interest they ever held in same.

■ In Points of Error 14 through 20, inclusive, appellant complains in numerous ways of the action of the trial court in refusing to set aside the conveyance relating to the Capitan Ranch note. She also complains that the trial court held that the Capitan Ranch note was the separate property of appellee Teas, Jr. and thereby, in effect, saying that appellant had no interest in such note which could be awarded to her in the divorce action between the parties which is now pending.

The facts are undisputed that the note in question was taken as a part of the purchase price of the ranch in Culberson County which was deeded to Teas, Jr. and his sister. The deed was given several months following the marriage between Teas, Jr. and Margo. The deed contains the specific language concerning the fact that the property is conveyed to Teas, Jr. as his separate property and that any future payments on the indebtedness are to be made out of his separate monies. While it is true that the law presumes that all property acquired by either spouse during marriage (other than acquired by gift, devise or descent) is community property, yet such presumption may be legally displaced by specific recitals in deed of conveyance to the contrary. McCutchen v.

Purinton, 84 Tex. 603, 19 S.W. 710 (1892). This presumption as to the status of separate property may be, of course, overcome by contradicting evidence. The record in this case is devoid of any evidence that community funds were utilized to pay any part of the note given as consideration for the conveyance to Teas, Jr. and therefore the presumption of separate property must obtain. While there is evidence that Teas, Jr. and his wife placed "tremendous effort" into the enhancement of the value of the ranch, there was no evidence concerning the amount of such improvement resulting from joint labor, nor were there any jury findings or request for same, so that appellant has completely failed to demonstrate what interest she might have had in such ranch note. Appellant places great reliance upon such cases as Dillard v. Dillard, 341 S.W.2d 668 (Tex.Civ.App., Austin 1960, writ ref'd n. r. e.) and Goodloe v. Williams, 302 S.W.2d 235 (Tex.Civ.App., Texarkana 1957, writ ref'd). In each of these cases, however, the facts reveal that there was no written agreement at the time of transfer that the property was to be separate property. On the face of each transaction revealed in *Dillard* and *Goodloe* the property was community and the courts were holding that to overcome this there must have been an agreement at the time of transfer that only the separate assets would be looked to for satisfying the indebtedness. We hold that under the record here, as a matter of law, the presumption of separate property stands and therefore appellant Margo has demonstrated no interest in the Capitan note of which she could have been deprived.

■ Appellant contends that even if the Capitan note could be said to be the separate property of Paul Teas, Jr. that she, as the wife, is still entitled to have the trial court set aside the alleged transfer of conveyance because in a divorce action the court may, at its discretion, award any property of the spouses, including separate property, in favor of the other spouse. While this is a true statement of the law such has no appli-

cation here since the trial court was not passing upon a petition for divorce and was only concerned with setting aside an alleged fraudulent conveyance of property in which appellant claimed to have an interest. Since the record reveals that, as a matter of law, Margo had no interest in the separate property of her husband it necessarily follows that she had no property interest of which she could have been deprived by the transaction. Consequently, the jury findings that the transfer was made with intent to deprive her of her interest, and that such had such effect on her, can afford no legal ground for relief.

■ By her twenty-first, twenty-second and twenty-third points of error appellant complains of the failure of the trial court to enter judgment awarding her both actual and exemplary damages against appellees Teas, Jr. and Sr. These points are predicated upon the assumption that, as a matter of law, appellant had the right to set aside and cancel the conveyances in question and to be awarded damages, both actual and exemplary, for the alleged wrongful acts which resulted in the conveyances. As has been demonstrated in our consideration of appellant's prior points she has not shown herself to be entitled to any actual damages. No issue was requested or submitted to the jury concerning actual damages. As a matter of law appellant has suffered no actual loss or injury. As a matter of law appellant has not been the victim of fraud. While our Supreme Court in International Bankers Life Ins. Co. v. Holloway, 368 S.W.2d 567 (Tex.Sup.1963), has held that a litigant may recover exemplary damages in actions for equitable relief, it is also true that there must be some actual loss or injury to support the recovery of such damages. It has been the law of this state for many years that exemplary damages cannot stand alone, unsupported by proof of actual loss or injury. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (1934); 17 Tex.Jur.2d Damages, § 177, pp. 243–244.

The record as here presented, when stripped of nonessentials, simply reveals the picture of a husband and wife beset with both marital and financial difficulties. Tremendous community indebtedness hovers above them. The husband, as community manager, does that which the law permits him to do. He secures the community indebtedness with a pledge of both community and separate properties. The creditor bank does that which the law permits it to do by foreclosing upon the collateral upon default in payment of the debt. The consideration paid for the properties, both community and separate, is not inadequate, as a matter of law. The community received credit and discharge of the community indebtedness. The wife has therefore lost nothing. She still has whatever interest she formerly had in the Twentieth Century Fox contract. In the light of such facts we hold that the trial court rendered the only proper judgment that could have been rendered based upon the jury verdict returned.

We have carefully considered all of appellant's points of error and find the same to be without merit and they are overruled.

The judgment of the trial court is affirmed.